UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSA ZAYAS, *as Parent and Natural Guardian of R.Z.*; ROSA ZAYAS, *individually*; EDWIN ZAYAS, *as Parent and Natural Guardian of R.Z.*; and EDWIN ZAYAS, *individually*,

Plaintiffs,

-v.-

DAVID C. BANKS, *in his official capacity as Chancellor of New York City Department of Education*, and NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendants.

22 Civ. 7112 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Rosa and Edwin Zayas ("Plaintiffs"), individually and as parents and natural guardians of their son, R.Z., bring this motion for reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b) and Local Rule 6.3. Plaintiffs ask this Court to reevaluate its January 19, 2024 Opinion and Order (Dkt. #39 (the "MSJ Order")) denying Plaintiffs' motion for summary judgment and granting the cross-motion of Defendants David C. Banks (in his official capacity as Chancellor of the New York City Department of Education) and the New York City Department of Education (together, "DOE" or "Defendants"). Contrary to the MSJ Order's findings, Plaintiffs urge the Court to conclude that (i) DOE failed to offer R.Z. a free appropriate public education ("FAPE") for the 2021-2022 school year, as mandated by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1485; (ii) Plaintiffs' unilateral placement of R.Z. at the International Institute of the Brain ("iBRAIN") for the

2021-2022 school year was appropriate; and (iii) equitable considerations warrant reimbursement of Plaintiffs for the total cost of R.Z.'s attendance at iBRAIN. For the reasons discussed herein, the Court denies Plaintiffs' motion.

## BACKGROUND[1]

The Court assumes familiarity with the factual and procedural histories of this litigation and incorporates by reference the facts set forth in the MSJ Order. The Court summarizes below only the facts essential to the adjudication of the instant motion.

### A. Factual Background

R.Z., the son of Plaintiffs Rosa and Edwin Zayas, suffers from cerebral palsy, seizure disorder, hydrocephalus, dystonia, and global developmental delay, in addition to being legally blind, non-ambulatory, nonverbal, and having a shunt and a gastronomy tube. (Pl. 56.1 ¶¶ 1, 3-4). Pursuant to IDEA, DOE is required to provide R.Z. with a FAPE, including by developing an appropriate "individualized education program" ("IEP") for him. 20 U.S.C. §§ 1412(a)(3)-(4); *see also* N.Y. COMP. CODES R. & REGS. tit. 8, § 200.1(y) (defining "IEP" as "a written statement ... which includes the [programs and services] ... to be provided [by the state] to meet the unique educational needs

---

1 The facts set forth in this Opinion are drawn from the parties' submissions in connection with the parties' cross-motions for summary judgment. The Court primarily sources facts from Plaintiffs' Local Rule 56.1 Statement ("Pl. 56.1" (Dkt. #18)) and Defendants' Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #30)), as well as the Complaint ("Compl." (Dkt. #1)).

The Court refers to the decisions of the Impartial Hearing Officer ("IHO") and the State Review Officer ("SRO") in the underlying administrative proceedings as "IHO Decision" (Dkt. #1-1) and "SRO Decision" (Dkt. #1-2), respectively.

of a student with a disability"); *id.* § 200.4(d)(2) (describing the components of an IEP). The instant dispute surrounds the IEP formulated for R.Z. for the 2021-2022 school year (the "2021-2022 IEP"), which, among other things, called for R.Z.'s enrollment in a 12-month program in a 6:1:1 class at a District 75 ("D75") school. (Pl. 56.1 ¶¶ 10-16). Consistent with the 2021-2022 IEP, for the 2021-2022 school year, DOE placed R.Z. in the Horan School, a D75 school wherein R.Z. could be assigned to a 6:1:1 classroom. (Def. 56.1 ¶ 7).

Plaintiffs disagreed with the 2021-2022 IEP's recommended placement of R.Z. at a D75 school, in part due to the findings of Dr. Isabel Rodriguez, who conducted an Independent Educational Evaluation of R.Z. in May and June 2021. (Def. 56.1 ¶ 12; Compl. ¶¶ 68, 76). According to Dr. Rodriguez, "D75 programs often include children with autism spectrum disorder diagnoses, a clinical presentation that requires different academic and supportive needs than those needed of a child [like R.Z.] with an acquired brain injury"; for this reason, a D75 program "cannot meet [R.Z.'s] needs." (IHO Decision 5-7). Crediting Dr. Rodriguez's assessment of the impropriety of R.Z.'s placement in a D75 school, Plaintiffs elected to unilaterally enroll R.Z. at iBRAIN for the 2021-2022 school year. (Def. 56.1 ¶ 10).

On the basis that DOE had denied R.Z. a FAPE for the 2021-2022 school year, Plaintiffs subsequently initiated state administrative proceedings seeking reimbursement for the cost of R.Z.'s iBRAIN tuition and related expenses. (Def. 56.1 ¶¶ 25-28). Following a due process hearing conducted in November and December 2021, Impartial Hearing Officer ("IHO") Diane Ciccone issued a

decision on February 9, 2022, concluding that DOE had failed to offer R.Z. a FAPE for the 2021-2022 school year and granting Plaintiffs' request for reimbursement (the "IHO Decision"). (IHO Decision 15-16; Pl. 56.1 ¶¶ 37-42). On appeal, State Review Officer ("SRO") Justyn Bates reversed the decision of IHO Ciccone in a decision issued on April 20, 2022 (the "SRO Decision"). (*Id.* ¶¶ 43-45).

**B. Procedural Background**

Plaintiffs commenced the instant action, seeking this Court's reversal of the SRO Decision, on August 19, 2022. (*See generally* Compl.). On February 2, 2023, the parties requested leave to file cross-motions for summary judgment in lieu of proceeding to discovery (Dkt. #16), which request the Court granted (Dkt. #17). "Because the allegations in the Complaint concern[ed] an underlying administrative hearing," the parties indicated that the issues in this action could be resolved on the basis of the certified administrative record alone. (Dkt. #16 at 1-2).

On April 3, 2023, Plaintiffs filed their motion for summary judgment and accompanying Local Rule 56.1 statement of material facts. (Dkt. #18-20). On June 2, 2023, Defendants filed their cross-motion for summary judgment and opposition to Plaintiffs' motion for summary judgment; Local Rule 56.1 statement of material facts; and responses to Plaintiffs' Local Rule 56.1 statement of material facts. (Dkt. #29-32). On July 3, 2023, Plaintiffs filed their opposition to Defendants' cross-motion for summary judgment, reply in further support of their motion for summary judgment, and responses to

Defendants' Local Rule 56.1 statement of material facts. (Dkt. #33-34). Finally, on August 7, 2023, Defendants filed their reply in further support of their cross-motion for summary judgment. (Dkt. #38).

On January 19, 2024, the Court issued the MSJ Order, denying Plaintiffs' motion and granting Defendants' motion, both in full. (*See generally* MSJ Order). Specifically, applying the *Burlington*/*Carter* test — which governs claims seeking tuition reimbursement under IDEA, *see C.F. ex rel. R.F.* v. *N.Y.C. Dep't of Educ.*, 746 F.3d 68, 76 (2d Cir. 2014) — the Court concluded that DOE's placement of R.Z. at the Horan School did not violate IDEA. (*See* MSJ Order 14-31 (citing *Sch. Comm. of Town of Burlington, Mass.* v. *Dep't of Educ. of Mass.*, 471 U.S. 359 (1985); *Florence Cnty. Sch. Dist. Four* v. *Carter By & Through Carter*, 510 U.S. 7 (1993))). Further, the Court found that because DOE's proposed placement did not violate IDEA (the first prong of the *Burlington*/*Carter* test), it was not necessary for the Court to evaluate whether Plaintiffs' private placement of R.Z. at iBRAIN was appropriate or whether equitable considerations favored Plaintiffs' reimbursement (the second and third prongs, respectively). (*Id.* at 15). Accordingly, the Court affirmed the SRO Decision and denied Plaintiffs' request for reimbursement of the costs of R.Z.'s private placement at iBRAIN. (*Id.* at 30-31).

On February 16, 2024, Plaintiffs filed the instant motion for reconsideration of the MSJ Order pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) and Local Rule 6.3. (Dkt. #41-42). Defendants filed an

opposition to Plaintiffs' motion on April 1, 2024 (Dkt. #45), and Plaintiffs filed a reply in further support of their motion on April 8, 2024 (Dkt. #47).

## DISCUSSION

### A.   Applicable Law

Federal Rules of Civil Procedure 59(e) and 60(b) and Local Civil Rule 6.3 govern motions for reconsideration, depending on the type of order at issue and specific relief sought.  *See Cadet* v. *All. Nursing Staffing of N.Y., Inc.*, No. 21 Civ. 3994 (KPF), 2023 WL 3872574, at *4 (S.D.N.Y. Jan. 6, 2023), *reconsideration denied*, 2023 WL 3872558 (S.D.N.Y. Apr. 12, 2023); *Silverberg* v. *DryShips Inc.*, No. 17 Civ. 4547 (SJF), 2018 WL 10669653, at *2 (E.D.N.Y. Aug. 21, 2018); *United States* v. *Real Prop. & Premises Located at 249-20 Cambria Ave., Little Neck, N.Y. 11362*, 21 F. Supp. 3d 254, 259 (E.D.N.Y. 2014); *see also* Fed. R. Civ. P. 59(e) (motion to alter or amend judgment), 60(b) (motion for relief from judgment or order); Local Civ. R. 6.3 (motion for reconsideration).  All reconsideration motions are subject to a "strict" standard, *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), and will be granted "only when the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice,'" *Sec. & Exch. Comm'n* v. *Gottlieb*, No. 98 Civ. 2636 (LAP), 2021 WL 5450360, at *2 (S.D.N.Y. Nov. 22, 2021) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).

Importantly, a reconsideration motion is not a vehicle (i) to "introduce additional facts not in the record on the original motion"; (ii) to "advance[] new

arguments or issues that could have been raised on the original motion"; or (iii) to "relitigate an issue already decided." *Silverberg*, 2018 WL 10669653, at *2 (internal quotation marks omitted) (collecting cases); *accord Analytical Survs., Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012). Instead, reconsideration may be warranted where the movant "can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schrader*, 70 F.3d at 257; *see also Lichtenberg* v. *Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (summary order). Ultimately, "the decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court." *Vincent* v. *Money Store*, No. 03 Civ. 2876 (JGK), 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011) (internal quotation marks omitted).

**B. Analysis**

In the preliminary statement of their memorandum of law in support of their motion for reconsideration, Plaintiffs identify two issues with the Court's MSJ Order that they believe constitute grounds for reconsideration. (*See* Dkt. #42 at 1-3). In particular, they argue that:

- "[T]he Court seems to have overlooked that [IDEA] … gives courts broad authority to grant 'appropriate' relief, including reimbursement for the cost of private special education … [and] the Court has discretion to consider equitable factors relating to the reasonableness of the Plaintiffs' actions when fashioning relief." (*Id.* at 2).

- "The Court erred in granting the unfounded SRO Decision more deference than it rightfully deserved. Considering equities is a duty that Congress has tasked

> this Court to perform without unwarranted deference to the decisions of the SRO." (*Id.* at 2-3).

Both assertions are plainly incorrect. As to the first — whether the Court overlooked its "discretion to consider equitable factors" when fashioning relief under IDEA — the Court's conclusion that R.Z. was not denied a FAPE for the 2021-2022 school year negated the Court's need to fashion relief for Plaintiffs altogether, and thus any concurrent need to "consider equitable factors" in doing so. As to the second, the amount of deference offered to the SRO Decision, the Court finds no error in its decision to accord the SRO Decision substantial deference. In explaining this decision, the Court discussed in the MSJ Order (i) the cursory nature of the IHO Decision; (ii) the relative length and thoroughness of the SRO Decision; (iii) the extensive citations to primary source material throughout the SRO Decision; and (iv) the Court's own review of such primary source material and assessment of the accuracy of the SRO's characterizations thereof. (MSJ Order 15-17, 26-28, 30; *see id.* at 17 n.3). What is more, beyond asserting that the Court erred in its decision concerning deference to the SRO Decision, Plaintiffs offer no law or fact demonstrating what such error was; Plaintiffs do not identify any new or previously overlooked matter that impacts (let alone merits alteration of) the Court's original analysis.

Far more troubling than the vague and conclusory nature of Plaintiffs' proffered grounds for reconsideration is the fact that Plaintiffs' submissions in support of their motion for reconsideration are copied, word-for-word, almost in full, from their submissions in connection with the parties' cross-motions for summary judgment. Exhibit 1 to this Opinion provides a comparison of

Plaintiffs' memorandum of law in support of their motion for reconsideration (Dkt. #42), filed February 16, 2024, with excerpts of Plaintiffs' memorandum of law in support of their motion for summary judgment (Dkt. #20), filed April 3, 2023, and memorandum of law in opposition to Defendants' cross-motion for summary judgment and reply in further support of their motion for summary judgment (Dkt. #33), filed July 3, 2023.  Exhibit 2 provides a comparison of Plaintiffs' reply memorandum of law in further support of their motion for reconsideration (Dkt. #47), filed April 8, 2024, with excerpts of Plaintiffs' memorandum of law in support of their motion for reconsideration (Dkt. #42), filed February 16, 2024.[2]  As the Exhibits demonstrate, with the exception of the preliminary statements and a handful of paragraphs in Plaintiffs' reply memorandum, Plaintiffs' submissions on the instant motion are entirely repurposed from other briefs.  (*See generally* Ex. 1-2).

The two exhibits bring into sharp relief the futility of Plaintiffs' motion for reconsideration.  Because Plaintiffs simply regurgitate the arguments made in support of their motion for summary judgment in their submissions on the instant motion, this Court's consideration of such arguments is by definition "relitigat[ion] [of] issue[s] already decided."  *Silverberg*, 2018 WL 10669653, at *2 (internal quotation marks omitted); *see also Am. Home Assurance Co.* v. *Crowley Ambassador*, No. 01 Civ. 3605 (PKL), 2003 WL 21313972, at *4

---

[2]    The Court notes that the software used to produce the comparisons in Exhibits 1 and 2 is imperfect and, at times, identifies certain text in a document as unique when, in reality, it is copied from the file against which that document is being compared (*i.e.*, the software operates in Plaintiffs' favor in that it is over-inclusive as to its identification of unique text).

(S.D.N.Y. June 6, 2003) ("A motion for reconsideration is not an opportunity to press more strenuously the same arguments made in the original motion."); *Associated Press* v. *U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) ("It is settled law in this District that a motion for reconsideration is n[ot] an occasion for repeating old arguments[.]"). Not only is this recapitulation an inappropriate use of the reconsideration vehicle, but it is also a waste of both Defendants' and this Court's time.[3]

For the foregoing reasons, the Court denies Plaintiffs' motion for reconsideration. The Court warns Plaintiffs and their counsel that, while the Court will refrain from issuing sanctions at this time, Plaintiffs' submissions in connection with the instant motion get close to the line of sanctionable conduct under Federal Rule of Civil Procedure 11(b).

**CONCLUSION**

Plaintiffs' motion for reconsideration is hereby DENIED. The Clerk of Court is directed to terminate the pending motion at docket entry 41.

SO ORDERED.

Dated: April 17, 2024
New York, New York

KATHERINE POLK FAILLA
United States District Judge

3 The Court appreciates Defendants' thoughtful engagement with Plaintiffs' submissions notwithstanding the fact that Defendants, too, had already meaningfully addressed the arguments set forth therein in the course of summary judgment briefing.

# EXHIBIT 1

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

**PRELIMINARY STATEMENT**

Plaintiffs EDWIN and ROSA ZAYAS, as Parents and Natural Guardians of R.Z., and Individually, submit this Memorandum of Law under Fed. R. Civ. P. 59(e), Rule 60(b), and Local Rule 6.3.[1] A motion filed under Fed. R. Civ. P. 59(e) must be filed no later than 28 days after the entry of the judgment. A motion filed under Local Civil Rule 6.3 for the Southern and Eastern Districts of New York permits a party to move for Reconsideration or Reargument within 14 days after the entry of the Court's determination of the original motion or in the case of a court order resulting in a judgment, within 14 days after the entry of the judgment.

On January 19, 2024, the Court issued an Opinion and Order denying the Plaintiffs' Motion for Summary Judgment, granting the Defendant's Cross-Motion for Summary Judgment, and dismissing this case. Case 22-cv-07112 Dkt. No. 39. The Clerk of the Court was directed to terminate all pending motions and deadlines and to close the case.

Under Fed. R. Civ. P. 59(e) and Local Rule 6.3, the Plaintiffs must show that the Court overlooked "controlling law or factual matters" that had been previously put before it. Plaintiffs contend that reconsideration is necessary, given the facts not considered by this Court in rendering its decision. Specifically, the Plaintiffs seek reconsideration of this Court's Order entered on January 19, 2024. [ECF No. 39], which denied the Plaintiffs' Motion for Summary Judgment that would have required the New York City Department of Education ("DOE") to directly fund R.Z.'s tuition for the 2021–2022 extended school year ("ESY") at the International Institute for the Brain ("iBRAIN"), along with special transportation, nursing, and a 1:1 travel paraprofessional.

[1] *Baker obo KO v. Lewis-Ashley*, No. 22-CV-4971 (LTS), 2023 WL 2072469, at *1 (S.D.N.Y. Feb. 16, 2023); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). *See also*, *Curtis v. Greenberg*, No. 20-CV-824 (PKC) (LB), 2022 WL 173108, at *2 (E.D.N.Y. Jan. 19, 2022), *aff'd*, No. 22-252-CV, 2023 WL 6324324 (2d Cir. Sept. 29, 2023).

*Compared with* Memorandum of Law in Support of Motion for Summary Judgment (Dkt. #20)

**PRELIMINARY STATEMENT**

Plaintiffs EDWIN and ROSA ZAYAS, as Parents and Natural Guardians of R.Z., and Individually, submit this Memorandum of Law ~~in support of their motion for summary judgment, seeking an Order: (1) finding that Defendants David C. Banks, in his official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education (collectively "DOE") failed to offer R.Z. a free appropriate public education ("FAPE") for the 2021-2022 school year ("SY"); (2) finding that R.Z.'s unilateral placement at the International Institute of the Brain ("iBRAIN") was appropriate; (3) finding that the equitable considerations warrant total relief in the form of funding for R.Z.'s placement during the 2021-2022 SY, as well as any such other relief this Court deems just, equitable, and proper~~under Fed. R. Civ. P. 59(e), Rule 60(b), and Local Rule 6.3.[1] A motion filed under Fed. R. Civ. P. 59(e) must be filed no later than 28 days after the entry of the judgment. A motion filed under Local Civil Rule 6.3 for the Southern and Eastern Districts of New York permits a party to move for Reconsideration or Reargument within 14 days after the entry of the Court's determination of the original motion or in the case of a court order resulting in a judgment, within 14 days after the entry of the judgment.

On January 19, 2024, the Court issued an Opinion and Order denying the Plaintiffs' Motion for Summary Judgment, granting the Defendant's Cross-Motion for Summary Judgment, and dismissing this case. Case 22-cv-07112 Dkt. No. 39. The Clerk of the Court was directed to terminate all pending motions and deadlines and to close the case.

Under Fed. R. Civ. P. 59(e) and Local Rule 6.3, the Plaintiffs must show that the Court overlooked "controlling law or factual matters" that had been previously put before it. Plaintiffs contend that reconsideration is necessary, given the facts not considered by this Court in rendering its decision. Specifically, the Plaintiffs seek reconsideration of this Court's Order entered on January 19, 2024. [ECF No. 39], which denied the Plaintiffs' Motion for Summary Judgment that would have required the New York City Department of Education ("DOE") to directly fund R.Z.'s tuition for the 2021–2022 extended school year ("ESY") at the International Institute for the Brain ("iBRAIN"), along with special transportation, nursing, and a 1:1 travel paraprofessional.

[1] *Baker obo KO v. Lewis-Ashley*, No. 22-CV-4971 (LTS), 2023 WL 2072469, at *1 (S.D.N.Y. Feb. 16, 2023); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471
101 (2d Cir. 2010). *See also*, *Curtis v. Greenberg*,
Jan. 19, 2022), *aff'd*, No. 22-252-CV, 2023 WL 63

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

*Compared with* Memorandum of Law in Support of Motion for Summary Judgment (Dkt. #20)

In adopting the Defendants' narrative of this matter, the Court seems to have overlooked that § 1415 (i) (2) (C) (iii) provides in pertinent part, "In any action brought under this paragraph, the Court… (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the Court determines is appropriate." The Supreme Court has recognized that § 1415 (i) (2) (C) (iii) gives courts broad authority to grant "appropriate" relief, including reimbursement for the cost of private special education when a school district fails to provide a free appropriate public education ("FAPE"). *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009). In some cases, reimbursement is appropriate even where DOE offered the student a FAPE.[2]

The Court has discretion to consider equitable factors relating to the reasonableness of the Plaintiffs' actions when fashioning relief.[3] And while courts may not substitute their notions of 'sound educational policy' for those of the school authorities they review, a court accords no particular deference to a State Review Officer ("SRO") on pure questions of law. *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006); *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998); *see also Carmel Cent. Sch. Dist. v. V.P. ex-rel. G.P.*, 373 F. Supp. 2d 402, 408 (S.D.N.Y. 2005), *aff'd sub nom. Carmel Cent. Sch. Dist. v. V.P.*, 192 F. App'x 62 (2d Cir. 2006) ("[A]n SRO's determination of a pure question of law is not subject to deference"); *Reid ex-rel. Reid v. D.C.*, 401 F.3d 516, 521 (D.C. Cir. 2005) (no deference is to be given to a hearing officer's conclusion where that conclusion "raises an issue of statutory construction, a pure question of law that courts review de novo").

Given the foregoing, the Court erred in granting the unfounded SRO Decision more deference than it rightfully deserved. Considering equities is a duty that Congress has tasked this

---

[2] *T.M. ex-rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145 (2d Cir. 2014).

[3] *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 360 (S.D.N.Y. 2009); *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007), citing *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 16 (1993).

In adopting the Defendants' narrative of this matter, the Court seems to have overlooked that § 1415 (i) (2) (C) (iii) provides in pertinent part, "In any action brought under this paragraph, the Court… (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the Court determines is appropriate." The Supreme Court has recognized that § 1415 (i) (2) (C) (iii) gives courts broad authority to grant "appropriate" relief, including reimbursement for the cost of private special education when a school district fails to provide a free appropriate public education ("FAPE"). *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009). In some cases, reimbursement is appropriate even where DOE offered the student a FAPE.[2]

The Court has discretion to consider equitable factors relating to the reasonableness of the Plaintiffs' actions when fashioning relief.[3] And while courts may not substitute their notions of 'sound educational policy' for those of the school authorities they review, a court accords no particular deference to a State Review Officer ("SRO") on pure questions of law. *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006); *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998); *see also Carmel Cent. Sch. Dist. v. V.P. ex-rel. G.P.*, 373 F. Supp. 2d 402, 408 (S.D.N.Y. 2005), *aff'd sub nom. Carmel Cent. Sch. Dist. v. V.P.*, 192 F. App'x 62 (2d Cir. 2006) ("[A]n SRO's determination of a pure question of law is not subject to deference"); *Reid ex-rel. Reid v. D.C.*, 401 F.3d 516, 521 (D.C. Cir. 2005) (no deference is to be given to a hearing officer's conclusion where that conclusion "raises an issue of statutory construction, a pure question of law that courts review de novo").

Given the foregoing, the Court erred in granting the unfounded SRO Decision more deference than it rightfully deserved. Considering equities is a duty that Congress has tasked this

[2] *T.M. ex-rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145 (2d Cir. 2014).

[3] *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 360 (S.D.N.Y. 2009); *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007), citing *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 16 (1993).

2

Text only in previous submission

Text in both

Text only in new submission

Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

*Compared with* Memorandum of Law in Support of Motion for Summary Judgment (Dkt. #20)

Court to perform without unwarranted deference to the decisions of the SRO. Plaintiffs are entitled to Summary Judgment, as the record shows that DOE denied R.Z. a FAPE for the 2021–2022 ESY, and the Parent's unilateral placement at iBRAIN was appropriate.

**STATEMENT OF FACTS**

Plaintiffs ROSA and EDWIN ZAYAS are the Parents and Natural Guardians of R.Z., a sixteen-year-old young man during the 2021–2022 SY diagnosed with cerebral palsy, hydrocephalus, dystonia, and a seizure disorder. [R 36]. R.Z. also exhibits global developmental delays, is legally blind, non-verbal, non-ambulatory, and has a shunt and gastronomy tube ("G-tube"). [R 8]. R.Z. depends on others for all activities of daily living. [R 36]. At the underlying hearings, Dr. Isabella Rodriguez, who performed R.Z.'s most recent neuropsychological exam, testified that because of these severe limitations, the Student cannot care for himself independently or learn on a typical academic trajectory [R 263] and lacks social communication skills because of his profoundly low intellectual capacity. [R 266].

This is further exhibited by the results of the neuropsychological independent education evaluation ("IEE") that was conducted on January 18, 2021, in which R.Z. tested at a full-scale IQ of 40 using the Wechsler Intelligence Scale for Children, Fifth Edition (WISC-V). On March 10, 2021, the Committee on Special Education ("CSE") held its annual IEP[4] meeting, in which the Plaintiffs participated, to revisit R.Z.'s IEP for the 2021-2022 SY. Because of the March 10, 2021, IEP Meeting, the CSE recommended R.Z. for a 6:1:1 special class in a District 75 ("D75") school, with individual Occupational Therapy ("OT") four times a week in sixty-minute sessions, individual Physical Therapy ("PT") five times a week in sixty-minute sessions; individual Speech-Language Therapy ("SLT") five times a week in sixty-minute sessions; individual Vision

[4] Individualized Education Program.

3

Court to perform without unwarranted deference to the decisions of the SRO. Plaintiffs are entitled to Summary Judgment, as the record shows that DOE denied R.Z. a FAPE for the 2021–2022 ESY, and the Parent's unilateral placement at iBRAIN was appropriate.

**STATEMENT OF FACTS**

Plaintiffs ROSA and EDWIN ZAYAS are the Parents and Natural Guardians of R.Z., a sixteen-year-old young man during the 2021–2022 SY diagnosed with cerebral palsy, hydrocephalus, dystonia, and a seizure disorder. [R 36]. R.Z. also exhibits global developmental delays, is legally blind, non-verbal, non-ambulatory, and ~~had~~has a shunt and gastronomy tube ("G- tube"). [R 8]. R.Z. depends on others for all activities of daily living. [R 36]. At the underlying hearings, Dr. Isabella Rodriguez, who performed R.Z.'s most recent neuropsychological exam, testified that because of these severe limitations, the Student cannot care for himself independently or learn on a typical academic trajectory [R 263] and lacks social communication skills ~~due to~~because of his profoundly low intellectual capacity. [R 266].

This is further exhibited by the results of the neuropsychological independent education evaluation ("IEE") that was conducted on January 18, 2021, in which R.Z. tested at a full-scale IQ of 40 using the Wechsler Intelligence Scale for Children, Fifth Edition (WISC-V). On March 10, 2021, the Committee on Special Education ~~(“~~("CSE~~”~~") held its annual ~~IEP~~IEP[4] meeting, in which the

~~Parents~~ Plaintiffs participated, to revisit R.Z.'s IEP for the 2021-~~2022SY. As a result~~2022 SY. Because of the March 10, 2021, IEP Meeting, the CSE recommended R.Z. for a 6:1:1 special class in a District 75 ("D75") school, with individual Occupational Therapy ("OT") four times a week in sixty-minute sessions~~;~~, individual Physical Therapy ("PT") five times a week in sixty-minute sessions; individual Speech- Language Therapy ("SLT") five times a week in sixty-minute sessions; individual Vision-

[4] Individualized Education Program.

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

Education Services three times a week in sixty-minute sessions; and group Parent Counseling and Training once a month for sixty minutes. The CSE also recommended a 1:1 paraprofessional, a 1:1 nurse during transportation to and from school, individual assistive technology services once a week for sixty-minute sessions, and daily use of assistive technology, *e.g.*, switches with voice output. [R 9].

In prior-written notices dated March 16, 2021, and May 27, 2021, DOE informed the Parents of the CSE's determination for the above-listed services at a D75 school and the name of the proposed D75 school that R.Z. would attend. [R 10]. The Parents later sent DOE a Ten-Day notice on June 23, 2021, indicating they disagreed with the proposed placement for the 2021–2022 SY, and notified DOE of their intent to unilaterally place R.Z. at iBRAIN for the 2021–2022 SY. [R 10].

Toward the end of May, into the early days of June 2021, a second neuropsychological IEE (bilingual) exam was held over a series of days. [R 10]. The neuropsychologist found that R.Z.'s full cognitive potential was difficult to quantify because of the limits of the neuropsychological testing. [Id.]. She also found that R.Z. demonstrated some verbal comprehension and understood simple cause-and-effect associations. [R 10–11]. The same neuropsychologist would later testify at R.Z.'s administrative hearing that she had concerns for R.Z.'s safety in a D75 special class with students on the autism spectrum. [R 46–47]. Specifically, Dr. Rodriguez would testify that:

> ". . . given [R.Z.'s] visual impairment, lack of mobility in a classroom with students who are ambulatory, on the autism spectrum who would have stereotypical maladaptive behaviors which could place the STUDENT in danger. The doctor also opined that the students on the autism spectrum require a different type of instruction from students who have brain injuries (Tr. 150). She opined the STUDENT needed to continue the highly individualized instruction that he was receiving at the PRIVATE SCHOOL. (Tr. 149). The Placement in the D75 environment would not be appropriate for this student. Significant safety issues involving other students, and the need for a highly intensive instruction which is

*Compared with* Memorandum of Law in Support of Motion for Summary Judgment (Dkt. #20)

Education Services three times a week in sixty-minute sessions; and group Parent Counseling and Training once a month for sixty minutes. The CSE also recommended a 1:1 paraprofessional, a 1:1 nurse during transportation to and from school, individual assistive technology services once a week for sixty-minute sessions, and ~~included~~ daily use of assistive technology, *e.g.*, switches with voice output. [R 9].

In prior-~~-~~written notices dated March 16, 2021, and May 27, 2021, DOE informed the Parents of the CSE's determination for the above-listed services at a D75 school and the name of the proposed D75 school that R.Z. would attend. [R 10]. The Parents later sent DOE a Ten-Day notice on June 23, 2021, indicating they disagreed with the proposed placement for the 2021–2022 SY, and notified DOE of their intent to unilaterally place R.Z. at iBRAIN for the 2021–2022 SY. [R 10].

Toward the end of May, into the early days of June 2021, a second neuropsychological IEE (bilingual) exam was held over a series of days. [R 10]. The neuropsychologist found that ~~the neuropsychological testing was limited, thus,~~ R.Z.'s full cognitive potential was difficult to quantify~~,~~ because of the limits of the neuropsychological testing. [Id.]. She also found that R.Z. demonstrated some verbal comprehension and ~~comprehended~~understood simple cause-and-effect associations. [R 10–11]. ~~This~~The same neuropsychologist would later testify at R.Z.'s administrative hearing that she had concerns for R.Z.'s safety in a D75 special class with students on the autism spectrum. [R 46–47]. Specifically, Dr. Rodriguez would testify that:

~~special class with students on the autism spectrum. [R 46-47]. ". . . Specifically, Dr. Rodriguez would testify that:~~

> "given [R.Z.'s] visual impairment, lack of mobility in a classroom with students who are ambulatory, on the autism spectrum who would have stereotypical maladaptive behaviors which could place the STUDENT in danger. The doctor also opined that the students on the autism spectrum require a different type of instruction from students who have brain injuries (Tr. 150). She opined the STUDENT needed to continue the highly individualized instruction that he was receiving at the PRIVATE SCHOOL. (Tr. 149). The Placement in the D75 environment would not be appropri[ate for this student. Significant safety issues] involving other students, and the ne[ed]

~~Text only in previous submission~~

Text in both

Text only in new submission

Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

different than his classmates make the placement in a D75 6:1:1 with children on the autism spectrum inappropriate."

[R 46–47].

Also, in June 2021, after DOE sent the notices for the proposed placement and program for the 2021–2022 SY, an assistive technology evaluation was conducted at the request of the CSE. [R 10]. R.Z. received a total score of 41 out of 160, placing him in the 26th percentile. [Id.]. The evaluators indicated that assistive technology would augment the student's communication abilities and help him use language to meet his daily needs. [Id.].

On August 12, 2021, the DOE emailed an IEP Meeting Notice for an IEP meeting scheduled on August 19, 2021, for R.Z.'s 2021–2022 SY educational program, giving the Plaintiff-Parents less than seven days' notice of the scheduled meeting. [R 181–182; R 186]. DOE also failed to notify R.Z.'s private school of the meeting, as they had previously done. [R 239–240]. The Parent-Plaintiffs would not be present at the IEP meeting and would later learn that the Meeting Notice DOE emailed to the Plaintiffs was filtered into their spam inbox, which was later confirmed by the testimony of R.Z.'s father. [R 295–296]. On the day of the IEP meeting, when the Parents did not appear, the CSE made one attempt to reach the Parents by phone. Unable to reach the Parents on the first attempt to call them, the CSE moved forward with the IEP meeting. [R 187].

In contravention of the Individuals with Disabilities Education Act ("IDEA"), the CSE did not attempt to reschedule the IEP meeting or phone the Parents a second time., even though R.Z.'s Parents have a history of participating in IEP meetings—Plaintiffs participated in the previous IEP meeting in March 2021. [R 296].

Following the administrative due process proceedings, on February 9, 2022, Impartial Hearing Officer ("IHO") Diane Ciccone issued her Findings of Fact and Decision ("FOFD"), holding that: (1) DOE denied R.Z. a FAPE for the 2021–2022 SY; (2) iBRAIN was an appropriate

5

*Compared with* Memorandum of Law in Support of Motion for Summary Judgment (Dkt. #20)

different than his classmates make the placement in a D75 6:1:1 with children on the autism spectrum inappropriate."

[R 46–_47].

Also, in June 2021, after DOE sent the notices for the proposed placement and program for the 2021–_2022 SY, an assistive technology evaluation was conducted at the request of the CSE. [R 10]. R.Z. received a total score of 41 out of 160, placing him in the 26th percentile. [Id.]. The evaluators indicated that assistive technology would augment the student's communication abilities and help him use language to meet his daily needs. [Id.].

On August 12, 2021, the DOE emailed an IEP Meeting Notice for an IEP meeting scheduled on August 19, 2021, for R.Z.'s 2021–_2022 SY educational program, giving the Plaintiff-Parents less than seven ~~day's~~days' notice of the scheduled meeting. [R 181–_182; R 186]. DOE also failed to notify R.Z.'s private school of the meeting, as they had previously done ~~prior~~. [R 239–_240]. The Parent-Plaintiffs would not be present at the IEP meeting and would later learn that ~~DOE's emailed IEP~~ the Meeting Notice DOE emailed to the Plaintiffs was filtered into ~~the Plaintiffs'~~their spam inbox, which was later confirmed by the testimony of R.Z.'s father. [R 295–_296]. On the day of the IEP meeting, when the Parents did not appear, the CSE made one ~~phone call, and after being unable to~~ attempt to reach the ~~Parent~~ Parents by phone. Unable to reach the Parents on the first

attempt to call them, the CSE moved forward with the IEP meeting. [R 187]. ~~The~~ In contravention of the Individuals with Disabilities Education Act ("IDEA"), the CSE did not attempt to reschedule the IEP meeting~~, nor did they try to wait and~~ or phone the Parents ~~again~~ a second time., even though R.Z.'s Parents have

a history of participating in IEP meetings ~~and recently~~—Plaintiffs participated in ~~an~~the previous IEP meeting in March 2021. [R 296].

~~After~~Following the administrative due process proceedings, on February 9, 2022, Impartial Hearing Officer ("IHO") Diane Ciccone issued her Findings of Fact and Decision ("FOFD~~"~~)"),

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

unilateral placement for R.Z.; and (3) the equitable considerations weighed in favor of the Parents, but reduced the award because the costs that the Parents contracted for were "excessive." [R 48]. The Decision was appealed to the Office of State Review under SRO Appeal No. 22–025.

On April 20, 2022, SRO Justyn P. Bates issued his Decision in SRO Appeal No. 22–025 and reversed the Decision of the IHO, finding that DOE provided R.Z. with a FAPE for the 2021–2022 SY. In finding that DOE provided a FAPE, the SRO declined to address Prongs II and III regarding the appropriateness of the unilateral placement and the equitable considerations. [R 33].

**LEGAL FRAMEWORK**

Congress enacted IDEA with the goals of (1) promoting the education of children with disabilities by ensuring that they receive an education that adequately addresses their needs, and (2) protecting the rights of students with disabilities and their parents. The IDEA mandates that state and local governments provide all children with disabilities with a FAPE, which must be "reasonably calculated to enable the child to receive educational benefits." See 20 U.S.C. § 1400[d][1][A]-[B] and *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206–07 (1982). *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006), quoting *Walczak*, 142 F.3d at 122.

For the school district to provide a Student with a FAPE, it must (a) comply with the procedural requirements outlined in the IDEA and (b) develop an IEP reasonably calculated to enable the Student to receive educational benefits. *See Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07 and *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005). A student's IEP is reviewed each year and includes a detailed description of the Student's current educational performance, annual and short-term educational goals, and specific instructional techniques and related services that will allow the Student to

*Compared with* Memorandum of Law in Support of Motion for Summary Judgment (Dkt. #20)

[...]ns weighed in favor of the Parents, but reduced the award because the costs that the ~~Parent~~<u>Parents</u> contracted for were "excessive." [R 48]. The Decision was appealed to the Office of State Review under SRO Appeal No. 22–025.

On April 20, 2022, ~~State Review Officer ("~~SRO~~")~~ Justyn P. Bates issued his Decision in SRO Appeal No. 22–025 and reversed the Decision of the IHO, finding that DOE provided R.Z. with a FAPE for the 2021–2022 SY. In finding that DOE provided a FAPE, the SRO declined to address Prongs II and III regarding the appropriateness of the unilateral placement and the equitable considerations. [R 33].

**LEGAL FRAMEWORK**

Congress enacted ~~the~~ IDEA with the goals of (1) promoting the education of children with disabilities by ensuring that they receive an education that adequately addresses their needs<u>,</u> and <u>(2)</u> protecting the rights of ~~disabled~~ students <u>with disabilities</u> and their parents. The IDEA mandates that state and local governments provide all ~~disabled~~ children with <u>disabilities with</u> a FAPE, which must be "reasonably calculated to enable the child to receive educational benefits." See ~~20 U.S.C. § 1400[~~ <u>20 U.S.C. § 1400[</u>d][1][A]-[B] and *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, ~~458 U.S. 176, 206-~~ <u>458 U.S. 176, 206</u>–07~~, 102 S. Ct. 3034, 73 L. Ed. 2d 690~~ (1982). *Frank G. v. Bd. of Educ. of Hyde Park*, ~~459 F.3d 356, 363~~ <u>459 F.3d 356, 363</u> (2d Cir. 2006), quoting *Walczak* ~~v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998).~~<u>, 142 F.3d at 122.</u>
~~(1)~~

For the school district to provide a Student with a FAPE, it must (a) comply with the procedural requirements outlined in the IDEA and (b) develop an IEP reasonably calculated to enable the Student to receive educational benefits. *See Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, ~~458 U.S. at 206–07 and Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir.~~ <u>458 U.S. at 206–07 and *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir.</u> 2005). A student's IEP is reviewed each year and includes a detailed description of the Student's current educational performance, annual and short-term educational goals, and specific instructional techniques and related servic[...]

~~Text only in previous submission~~
Text in both
<u>Text only in new submission</u>
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

achieve those goals. *S.Y. v. New York City Dep't of Educ.*, 210 F. Supp. 3d 556 (S.D.N.Y. 2016). In New York City, a CSE formulates a student's IEP, provided by the DOE, which is a team of parents, educators, and specialists responsible for examining the Student's current performance and needs and determining an education program that will provide that Student with a FAPE. N.Y. Educ. Law § 4402(1)(b)(1) (McKinney); *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012).

The IDEA specifies that a disabled student's IEP determinations may not rely on the Student's disability classification but must be based on the Student's specific and unique educational needs. See 20 U.S.C. § 1412 (a)(3); *F.O. v. New York City Dep't of Educ.*, 976 F. Supp. 2d 499, 525 (S.D.N.Y. 2013). New York State regulations mandate that students with highly intensive management needs must not be placed in a classroom with no more than six students. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(4)(ii)(a). While school districts need not list a specific school location in a student's IEP, a district's school assignment for a student must conform to IEP recommendations. *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 244 (2d Cir. 2015). In evaluating the Student for the creation of his IEP, a CSE must assess the Student in all areas related to the Student's suspected disability, such as health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(6)(vii); *See also*, 34 C.F.R. § 300.304(c)(4).

When parents are dissatisfied with the District's IEP determinations and believe the DOE denied their child a FAPE, the IDEA allows them to unilaterally place their child in a private school and seek tuition reimbursement from their local school district. *S.Y.*, 210 F. Supp. 3d 556, citing *M.O.*, 793 F.3d at 239 (per curiam). The standard generally used to determine whether parents are entitled to reimbursement from the district is known as the *Burlington/Carter* test. The two prongs

*Compared with* Memorandum of Law in Support of Motion for Summary Judgment (Dkt. #20)

achieve those goals. *S.Y.*~~, 210 F. Supp. 3d 556.~~ *v. New York City Dep't of Educ.*, 210 F. Supp. 3d 556 (S.D.N.Y. 2016). In New York City, a CSE formulates a student's IEP ~~is formulated by a CSE~~, provided by the DOE, which is a team of parents, educators, and specialists responsible for examining the Student's current performance and needs and determining an education program that will provide that Student with a FAPE. N.Y. Educ. Law-

§ 4402(1)(b)(1) (McKinney); *R.E. v. New York City Dep't of Educ.*, ~~694 F.3d 167, 175~~ (694 F.3d 167, 175 (2d Cir. 2012).

The IDEA specifies that a disabled student's IEP determinations may not rely on the Student's disability classification~~,~~ but must be

based on the Student's specific and unique educational needs. ~~See 20 U.S.C. § 1412~~See 20 U.S.C. § 1412 (a)(3); *F.O. v. New York City Dep't of Educ.*, ~~976 F. Supp. 2d 499, 525~~976 F. Supp. 2d 499, 525 (S.D.N.Y. 2013). ~~The~~ New York State regulations mandate that students with highly intensive management needs must not be placed in a classroom with ~~over~~no more than six students. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(4)(ii)(a). While school districts need not list a specific school location in a student's IEP, a district's school assignment for a student must conform to IEP recommendations. *M.O. v. New York City Dep't of Educ.*, ~~793 F.3d 236, 244 (2d Cir.~~793 F.3d 236, 244 (2d Cir. 2015). In evaluating the Student for the creation of his IEP, a CSE must assess the Student in all areas related to the Student's suspected disability, such as health, vision, hearing, social and emotional status, general intelligence ~~and~~, academic performance, communicative status, and motor abilities. N.Y. Comp. Codes R. & Regs. tit. ~~8~~8, § 200.4(b)(6)(vii); *See also*, 34 C.F.R. § 300.304(c)(4).

~~§ 200.4(b)(6)(vii); *See also*, 34 C.F.R. § 300.304(c)(4).~~

When parents are dissatisfied with the District's IEP determinations and believe ~~that~~ the DOE denied their child a FAPE, the IDEA allows them to unilaterally place their child in a private school and seek tuition reimbursement from their local school district. ~~*S.Y.*, 210 F. Supp. 3d 556, citing *M.O.*, 793 F.3d at 239~~ (*S.Y.*, 210 F. Supp. 3d 556, citing *M.O.*, 793 F.3d at 239 (per curiam). The standard generally used to determine whe

~~District~~district is known as the *Burlington/C*

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

of the *Burlington/Carter* test that must be proven for the administrative officer or Court to order reimbursement are: (1) the educational program offered by the school district did not offer the Student a FAPE ("Prong I"); (2) the private school alternative selected by the parents is appropriate to meet the Student's needs ("Prong II"); and (3) a balancing of the equitable considerations favors reimbursement to the parents ("Prong III"). *See Florence County School Dist. Four*, 510 U.S. 7. Under N.Y. Educ. Law § 4404(1)(c) (McKinney)). In New York, the school district has the initial burden of proving its IEP is adequate. *S.Y.*, 210 F. Supp. 3d 556, citing *R.E.*, 694 F.3d at 184–85 (footnote omitted); N.Y. Educ. Law § 4404(1)(c)). An IEP that cannot be implemented can never be adequate.

After an initial Impartial Hearing on the matter, either party may appeal the Decision of the IHO to the SRO. If either party is not satisfied with the decision of the SRO, that party may take action in state or federal Court for further review. *S.Y.*, 210 F. Supp. 3d 556 citing, *R.E.*, 694 F.3d at 175 (citing 20 U.S.C. § 1415(i)(2)(A)). A state or federal court then decides whether the school district's proposed IEP for the student is reasonably calculated to allow the Student to receive educational benefits and whether the parents' choice of private school placement was appropriate. *Id.* The criteria for determining whether the unilateral placement was appropriate is identical to the criteria for the appropriateness of the school district's IEP: whether it is reasonably calculated to enable the student to receive educational benefits. *See Frank G.*, 459 F.3d at 364.

*Compared with* Memorandum of Law in Support of Motion for Summary Judgment (Dkt. #20)

of the *Burlington/Carter* test that must be proven for the administrative officer or Court to order reimbursement are: (1) the educational program offered by the school district did not offer the Student a FAPE ("Prong I~~"), and~~"); (2) the private school alternative selected by the parents is appropriate to meet the Student's needs ("Prong II~~"),~~"); and (3) a balancing of the equitable considerations favors reimbursement to the parents ("Prong III"). *See Florence* *County School Dist. Four*, 510 U.S. 7. Under N.Y. Educ. Law § 4404(1)(c) (McKinney)). In New York, the school district has the initial burden of proving its IEP is adequate. *S.Y.*, 210 F. Supp. 3d 556, citing *R.E.*, 694 F.3d at 184–85 (footnote omitted); N.Y. Educ. Law § 4404(1)(c)).~~*Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993).~~ An IEP that cannot be implemented can never be adequate.~~Under N.Y. Educ. Law § 4404(1)(c) (McKinney)). The initial burden of proving the adequacy of the school district's IEP is placed on the school district. *S.Y.*, 210 F. Supp. 3d 556, citing *R.E.*, 694 F.3d at 184–85 (footnote omitted); N.Y. Educ. Law § 4404(1)(c)).~~

After an initial Impartial Hearing on the matter, either party may appeal the Decision of the IHO to the SRO. If either party is not satisfied with the ~~Decision~~decision of the SRO, that party may take ~~the~~ action ~~to~~in state or federal Court for further review. *S.Y.*, ~~210 F. Supp. 3d 556~~ 210 F. Supp. 3d 556 citing, *R.E.*, ~~694 F.3d at 175~~ (694 F.3d at 175 (citing ~~20 U.S.C. § 1415(i)(2)(A)). The~~20 U.S.C. § 1415(i)(2)(A)). A state or federal court then decides whether the school district's proposed IEP for the ~~Student~~student is reasonably calculated to allow the Student to receive educational benefits and whether the parents' choice of private school placement was appropriate. *Id.* The criteria for determining whether the unilateral placement was appropriate is identical to the criteria for the appropriateness of the school district's IEP: whether it is reasonably calculated to enable the ~~Student~~student to receive educational benefits. *See Frank G.*, ~~459 F.3d at 364.~~459 F.3d at 364.

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

## ARGUMENT

### I. DOE FAILED TO OFFER R.Z. A FAPE FOR THE 2021–2022 ESY

#### *A. DOE Failed to Offer R.Z. a FAPE Because It Did Not Place R.Z. in an Appropriate Class Grouping*

*Compared with* Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

## ARGUMENT

### I. DOE ~~DID NOT~~ FAILED TO OFFER R.Z. A FAPE FOR THE 2021–2022 ESY

#### *A. DOE ~~Did Not~~ Failed to Offer R.Z. a FAPE Because It Did Not Place R.Z. in an Appropriate Class Grouping*

Text only in previous submission

Text in both

Text only in new submission

Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

The New York State regulations implementing the IDEA mandate that if a student's IEP requires them to be placed in a special education class, "the size and composition of a class shall be based on the similarity of the individual needs of the students according to (i) levels of academic or educational achievement and learning characteristics; (ii) levels of social development; (iii) levels of physical development; and (iv) the management needs of the students in the classroom. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(2)(i)-(iv).

R.Z.'s IEP for the 2021–2022 school year requires him to be placed in a 6:1:1 classroom—a class having a maximum of six students, with one special education teacher and one group paraprofessional. For the 2021–2022 ESY, DOE offered R.Z. a placement in one such classroom at the D75 Horan School ("Horan School"). [R537]. At the time of DOE's offer, the Plaintiffs had received a report by Dr. Isabel Rodriguez, an independent neuropsychologist who had examined R.Z., that clearly stated that "a 6:1:1 District 75 classroom placement" such as the one proposed by DOE at the Horan School "cannot provide the high degree of individualized attention including two-person transfer, nursing care, intense rehabilitation, and technology-facilitated one-to-one instruction that [R.Z.] requires in order to make functional gains." [R803].[5] The report also stated that "D75 programs often include children with autism spectrum disorder diagnoses, a clinical presentation that requires different academic and supportive needs than those needed of a child with an acquired brain injury." [R803]. Dr. Rodriguez recommended that "[R.Z.] should remain in his current 6:1:1 special educational setting at iBrain for the remainder of his education." [R803]. Accordingly, the Plaintiffs rejected DOE's proposed school location and re-enrolled R.Z. at iBRAIN.

[5] Dr. Rodriguez's entire evaluation can be found at R797-R809.

The New York State regulations implementing the IDEA mandate that if a student's IEP requires them to be placed in a special education class, "the size and composition of a class shall be based on the similarity of the individual needs of the students according to (i) levels of academic or educational achievement and learning characteristics; (ii) levels of social development; (iii) levels of physical development; and (iv) the management needs of the students in the classroom. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(2)(i)-(iv).

R.Z.'s IEP for the 2021–2022 school year requires him to be placed in a 6:1:1 classroom—a class having a maximum of six students, with one special education teacher and one group paraprofessional. For the 2021–2022 ESY, DOE offered R.Z. a placement in one such classroom at the D75 Horan School ("Horan School"). [R537]. At the time of DOE's offer, the Plaintiffs had received a report by Dr. Isabel Rodriguez, an independent neuropsychologist who had examined R.Z., that clearly stated that "a 6:1:1 District 75 classroom placement" such as the one proposed by DOE at the Horan School "cannot provide the high degree of individualized attention including two-person transfer, nursing care, intense rehabilitation, and technology-facilitated one-to-one instruction that [R.Z.] requires in order to make functional gains." [R803]. ~~(Dr. Rodriguez's entire evaluation can be found at [R797-R809].)~~[5] The report also stated that "D75 programs often include children with autism spectrum disorder diagnoses, a clinical presentation that requires different academic and supportive needs than those needed of a child with an acquired brain injury." [R803]. Dr. Rodriguez recommended that "[R.Z.] should remain in his current 6:1:1 special educational setting at iBrain for the remainder of his education." [R803]. Accordingly, the Plaintiffs rejected DOE's proposed school location and re-enrolled R.Z. at iBRAIN.

[5] Dr. Rodriguez's entire evaluation can be found at R797-R809.

~~Text only in previous submission~~

Text in both

Text only in new submission

Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

SRO Bates incorrectly found that the Plaintiffs' rejection of DOE's offer was the type of "speculative" challenge that the Second Circuit prohibited in *M.O.*, 793 F.3d 236. In *M.O.*, the Second Circuit held that parents can prospectively challenge the proposed school location if the prospective challenge is not "speculative." *M.O.*, 793 F.3d at 244. In the context of improper grouping claims, it is impermissibly speculative for a parent to claim denial of a FAPE by speculating that the proposed school, which theoretically could place the student in a classroom with the appropriate grouping, still would not place the student in the grouping required by the student's IEP. But that is not the case here.[6]

The Plaintiffs have never argued the Horan School could not provide R.Z.'s IEP-required 6:1:1 class placement. Instead, the Plaintiffs assert (and have asserted throughout) that due to R.Z.'s particular disabilities and needs, DOE 6:1:1 classrooms are inappropriate and unsafe for R.Z. and would not allow him to progress academically. Far from being "speculative," the Plaintiffs' concerns were factually grounded in the report of Dr. Rodriguez, an independent clinical psychologist and expert in assessing children with brain injuries and on the autism spectrum. Rather than arguing DOE simply would not provide an appropriate class grouping when they could, the Plaintiffs argue DOE could not provide appropriate class groupings ***based on facts and evidence*** regarding the typical 6:1:1 class offered at the Horan School.

In the underlying administrative hearing, Dr. Rodriguez testified about the appropriateness of placing R.Z. in a 6:1:1 class in a traditional DOE school. It is important to note that Dr.

[6] The cases cited by SRO Bates have similar fact patterns. *See J.C. v. New York City Dep't of Educ.*, 643 F. App'x 31 (2d Cir. 2016) (the child was not denied a FAPE because the parent alleged that the proposed school location did not contain the appropriate classroom grouping); *G.S. v. New York City Dep't of Educ.*, No. 15-CV-5187 (RA), 2016 WL 5107039 (S.D.N.Y. Sept. 19, 2016) (it was impermissibly speculative to allege that the school would not place the student in the appropriate grouping when the school could do so); *L.C. v. New York City Dep't of Educ.*, No. 15 CIV. 4092 (PAC), 2016 WL 4690411 (S.D.N.Y. Sept. 6, 2016) (speculative to allege that the proposed school would not be able to implement the student's IEP).

10

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

SRO Bates incorrectly found that the Plaintiffs' rejection of DOE's offer was the type of "speculative" challenge that the Second Circuit prohibited in *M.O.*, ~~v. New York City Dep't of Educ.,~~ 793 F.3d 236 ~~(2d Cir. 2015)~~. In *M.O.*, the Second Circuit held that parents can prospectively challenge the proposed school location if the prospective challenge is not "speculative." *M.O.*, 793 F.3d at 244. In the context of improper grouping claims, it is impermissibly speculative for a parent to claim denial of a FAPE by speculating that the proposed school, which theoretically could place the student in a classroom with the appropriate grouping, still would not place the student in the grouping required by the student's IEP. But that is not the case here.[~~4~~6]

The Plaintiffs have never argued the Horan School could not provide R.Z.'s IEP-required 6:1:1 class placement. Instead, the Plaintiffs assert (and have asserted throughout) that ~~because of~~ due to R.Z.'s particular disabilities and needs, DOE 6:1:1 classrooms are inappropriate and unsafe for R.Z. and would not allow him to progress academically. Far from being "speculative," the Plaintiffs' concerns were factually grounded in the report of Dr. Rodriguez, an independent clinical psychologist and expert in assessing children with brain injuries and on the autism spectrum. Rather than arguing DOE simply would not provide an appropriate class grouping when they could ~~do so~~, the Plaintiffs argue DOE could not provide appropriate class groupings ***based on facts and evidence*** regarding the typical 6:1:1 class offered at the Horan School.

[4] In the underlying administrative hearing, Dr. Rodriguez testified about the appropriateness of placing R.Z. in a 6:1:1 class in a traditional DOE school. It is important to note that Dr.

[6] The cases cited by SRO Bates have similar fact patterns. *See J.C. v. New York City Dep't of Educ.*, 643 F. App'x 31 (2d Cir. 2016) (the child was not denied a FAPE because the parent alleged that the proposed school location did not contain the appropriate classroom grouping); *G.S. v. New York City Dep't of Educ.*, No. 15-CV-5187 (RA), ~~2016 WL 5107039 (S.D.N.Y. Sept.~~ 2016 WL 5107039 (S.D.N.Y. Sept. 19, 2016) (it was impermissibly speculative

~~6~~6

Text only in previous submission

Text in both

Text only in new submission

Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

Rodriguez has over 15 years of experience evaluating children with brain injuries and autistic children. [R259]. Based on her personal evaluation of R.Z. and her expansive knowledge of the children placed in traditional 6:1:1 DOE classrooms, Dr. Rodriguez testified that such a classroom would not be appropriate for R.Z. because R.Z.'s "academic learning [and] cognitive profile is vastly different from that of the children whom I've observed in 6:1:1s." [R272].

Aside from such a classroom being educationally inappropriate for R.Z., it also posed a safety hazard. Dr. Rodriguez testified:

> "I have concerns for [R.Z.'s] physical safety within that setting, given that he has very little gross motor control. I think there could be potential dangers within a traditional 6:1 class in a D75 [school], because children who have autism, and particularly those who are severely autistic, tend to have stereotyped movements. They oftentimes have maladaptive or disruptive behaviors in the classroom. And there's a safety issue there because [R.Z.] doesn't have the sort of safety awareness or the torso control to move him himself, you know, even if he's in his wheelchair and tries to move a bit from side to side, it's not controlled, and it is not—you know, he wouldn't have the spatial or the sort of processing speed to be able to get himself out of a situation if he was in some physical risk."

[R272].

***B. The SRO's Unfounded Decision Deserves No Deference from this Court***

SRO Bates claimed that Dr. Rodriguez's testimony was "rife with generalizations and unsupported hypotheticals … and stereotypes of students with different disability classifications..." [R32-R33]. In doing so, SRO Bates ignored the confirmatory testimony of Michelle Lefaivre, the Horan School assistant principal, who also testified at the underlying administrative hearing. Ms. Lefaivre testified that "the majority of students in our 6:1:1 program are students on the autism spectrum..." [R375]. Most students in these classes are also ambulatory. [R377]. SRO Bates further ignored the guidance of the United Federation of Teachers, the union representing the teachers employed at DOE schools, which describes the students in a 6:1:1 class as: "Student's behavior is characterized as aggressive, self-abusive or extremely withdrawn and with severe difficulties in

~~In the underlying administrative hearing, Dr. Rodriguez testified about the appropriateness of placing R.Z. in a 6:1:1 class in a traditional DOE school. Dr.~~ Rodriguez has over 15 years of experience evaluating children with brain injuries and autistic children. [R259]. Based on her personal evaluation of R.Z. and her expansive knowledge of the children placed in traditional 6:1:1 DOE classrooms, Dr. Rodriguez testified that such a classroom would not be appropriate for R.Z. because R.Z.'s "academic learning [and] cognitive profile is vastly different from that of the children whom I've observed in 6:1:1s." [R272].

~~Besides~~Aside from such a classroom being educationally inappropriate for R.Z., it also posed a safety hazard. Dr. Rodriguez testified:

> "I have concerns for [R.Z.'s] physical safety within that setting, given that he has very little gross motor control. I think there could be potential dangers within a traditional 6:1 class in a D75 [school], because children who have autism, and particularly those who are severely autistic, tend to have stereotyped movements. They oftentimes have maladaptive or disruptive behaviors in the classroom. And there's a safety issue there because [R.Z.] doesn't have the sort of safety awareness or the torso control to move him himself, you know, even if he's in his wheelchair and tries to move a bit from side to side, it's not controlled, and it is not—you know, he wouldn't have the spatial or the sort of processing speed to be able to get himself out of a situation if he was in some physical risk~~.~~."

[R272].

*B. The SRO's Unfounded Decision Deserves No Deference from this Court*

SRO Bates claimed that Dr. Rodriguez's testimony was "rife with generalizations and unsupported hypotheticals~~…~~ … and stereotypes of students with different disability classifications~~…~~..." [R32-R33]. In doing so, SRO Bates ignored the confirmatory testimony of Michelle Lefaivre, the Horan School assistant principal, who also testified at the underlying administrative hearing. Ms. Lefaivre testified that "the majority of students in our 6:1:1 program are students on the autism spectrum~~…"~~..." [R375]. Most students in these classes are also ambulatory. [R377]. SRO Bates ~~also~~further ignored the guidance of the United Federation of Teachers, the union representing the teachers employed at DOE schools, which describes the students in a 6:1:1 class as: "Student's behavior is characterized as aggressive, self-abusive or extremely withdrawn and with severe diffi

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

the acquisition and generalization of language and social skill development."[7] These students "usually" require "a specific behavior management program." *Id.*

It is important to note that Dr. Rodriguez is ***independent***, and her opinion carries much weight with the Plaintiffs. Any psychologist or administrator employed by the DOE will be viewed skeptically by a parent whose child the DOE has failed countless times before. Indeed, any reasonable parent who received a report by an ***independent*** psychologist stating that the proposed DOE location would not only fail to educate their child but also fail to keep their child safe, would reject the proposed school and keep their child at their then-current school location—where he was safe and thriving educationally and socially.

SRO Bates simply concluded Dr. Rodriguez was wrong, with no legitimate basis for this conclusion. Although courts often defer to administrative officers' decisions, "the deference owed to an SRO's decision depends on the ***quality of that opinion***." *R.E.*, 694 F.3d at 189. (emphasis added). Courts may consider "whether the decision being reviewed is well-reasoned and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *Id.*, quoting *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012). Courts have held that an inadequately reasoned decision fails to carefully consider significant evidence. *Scott ex-rel. C.S. v. New York City Dep't of Educ.*, 6 F. Supp. 3d 424, 440–41 (S.D.N.Y. 2014).

SRO Bates arbitrarily and capriciously discounted Dr. Rodriguez's testimony and effectively substituted his own opinion for an expert in the field. Thus, the SRO's conclusion that DOE's proposed grouping did not deny R.Z. a FAPE was baseless, should be afforded no deference, and,

[7] https://www.uft.org/teaching/students-disabilities/special-classes/special-class-staffing-ratios.

*Compared with* Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

~~characterized as aggressive, self-abusive or extremely withdrawn and with severe difficulties in~~ the acquisition and generalization of language and social skill development."[32] These students "usually" require "a specific behavior management program." *Id.*

It is important to note that Dr. Rodriguez is ***independent***, and her opinion carries much weight with the Plaintiffs. Any psychologist or administrator employed by the DOE will be viewed skeptically by a parent whose child the DOE has failed countless times before. ~~But~~Indeed, any reasonable parent who received a report by an ***independent*** psychologist stating that the proposed DOE location would not only fail to educate their child but also fail to keep their child safe, would reject the proposed school and keep their child at their then-current school location—where he was safe and thriving educationally and socially.

SRO Bates simply concluded Dr. Rodriguez was wrong, with no legitimate basis for this conclusion.

Although courts often defer to administrative officers' decisions, "the deference owed to an SRO's decision depends on the ***quality of that opinion***." *R.E.~~ v. New York City Dep't of Educ.~~*, 694 F.3d ~~167,~~at 189~~ (2d Cir. 2012).~~ (emphasis added). Courts may consider "whether the decision being reviewed is well-reasoned and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *Id.*, quoting *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012). Courts have held that an inadequately reasoned decision fails to carefully consider significant evidence. *Scott ex rel. C.S. v. New York City Dep't of Educ.*, 6 F. Supp. 3d 424, 440–41 (S.D.N.Y. 2014).

SRO Bates arbitrarily and capriciously discounted Dr. Rodriguez's testimony and effectively substituted his own opinion for an expert in ~~this~~the field. Thus, the SRO's conclusion that DOE's proposed grouping did not deny R.Z. a FAPE was ~~not well-reasoned~~baseless, should be afforded no deference, and,

[7] https://www.uft~~.et~~.org/teaching/students-disabilitie[...] ratios. ~~rg/teaching/students-disabilities/special-classe[...]~~

~~Text only in previous submission~~

Text in both

Text only in new submission

Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

in fact, should be overturned by this Court finding that Defendants did not provide R.Z. with a FAPE for the 2021–2022 school year.

*C. R.Z. Was Denied a FAPE Because Plaintiffs Were Denied the Opportunity to Meaningfully Participate in the August 2021 CSE[8] Meeting*

For the school district to provide a student with a FAPE, it must (a) comply with the procedural requirements outlined in the IDEA and (b) develop an IEP reasonably calculated to enable the student to receive educational benefits. *See Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07 and *Cerra*, 427 F.3d at 192.

Part of complying with the procedural requirements outlined in the IDEA is allowing parents to participate in their child's IEP meeting. The public agency "responsible for providing education to children with disabilities" (34 C.F.R. § 300.33) is required to "take steps to ensure that one or both of the parents of a child with a disability are present at each IEP meeting or are afforded an opportunity to participate," including providing ample notice and "scheduling the meeting at a mutually agreed on time and place." 34 C.F.R. § 300.322 (a). *Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1044 (9th Cir. 2013).

As the Ninth Circuit has noted, "Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA. An IEP that addresses the child's unique needs cannot be developed if those people who are most familiar with the child's needs are not involved or fully informed." *Amanda J. ex-rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001).

To afford parents a meaningful opportunity to take part in creating their child's IEP, a school district must try to schedule the IEP meeting at a mutually agreed-upon time and place. 34 C.F.R. § 300.322(a)(2); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(d). A school district may conduct a

[8] Committee on Special Education.

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

in fact, should be overturned by this Court ~~to find~~finding that Defendants did not provide R.Z. with a FAPE for the 2021–2022 school year.

*~~B.~~C. R.Z. Was Denied a FAPE Because Plaintiffs Were Denied the Opportunity to Meaningfully Participate in the August 2021 ~~CSE~~[3]CSE[8] Meeting*

For the school district to provide a student with a FAPE, it must (a) comply with the procedural requirements outlined in the IDEA and (b) develop an IEP ~~that is~~ reasonably calculated to enable the student to receive educational benefits. *See ~~Bd.~~Board of Educ. of Hendrick Hudson ~~Cent.~~ Central School~~Sch.~~ Dist., Westchester ~~Cnty. v. Rowley~~County*, 458 U.S. ~~176,~~at 206–07 and *Cerra*, ~~102 S. Ct. 3034, 73~~427 F.3d at 192.

~~L. Ed. 2d 690 (1982) and *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005).~~

Part of complying with the procedural requirements outlined in the IDEA is allowing parents to participate in their child's IEP meeting. The public agency "responsible for providing education to children with disabilities" (34 C.F.R. § 300.33) is required to "take steps to ensure that one or both of the parents of a child with a disability are present at each IEP meeting or are afforded an opportunity to participate~~"~~," including providing ample notice and "scheduling the meeting at a mutually agreed on time and place." 34 C.F.R. § 300.322 (a). *Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1044 (9th Cir. 2013).

As the Ninth Circuit has noted, "Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA. An IEP that addresses the child's unique needs cannot be developed if those people who are most familiar with the child's needs are not involved or fully informed." *Amanda J. ex-rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001).

To afford parents a meaningful opportunity to take part in creating their child's IEP, a school district must try to schedule the IEP meeting at a mutually agreed-upon time and place. ~~34 C.F.R.~~

34 C.F.R.

[8] Committee on Special Education.

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

CSE meeting without a parent present ***only if*** "the school is unable to convince the parents that they should attend. Here, the school must have a detailed record of its attempts, and the results of those attempts, to arrange a mutually agreed on time and place." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(d)(3).

DOE's feeble attempt to obtain the Plaintiffs' participation in the August 2021 CSE fell far short of what was legally required. DOE sent ***one*** email to the Plaintiffs less than seven days before the date and time DOE ***unilaterally*** set for the meeting. [R181-R186]. DOE never followed up when the Plaintiffs failed to respond because the email had gone to their junk folder. [R295-R296]. There was no attempt to hold the meeting at the requisite "mutually agreed-upon time and place." The DOE then made ***one*** phone call to the Plaintiffs ***on the date of the meeting***, and when no one answered the phone, proceeded to hold the meeting. [R187]. Even if the Plaintiffs had answered the phone call, such notice would not have satisfied the notice requirements of the IDEA. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(c)(1) (notice must be provided in writing and more than five days before the meeting).

Along with the clearly insufficient notice, it was also a pure violation of IDEA for the district to hold the meeting in the absence of the Plaintiffs, without the Plaintiffs affirmatively refusing to participate. If the parent ***affirmatively opts not to participate***, the district ***must obtain the parent's consent*** to proceed. As federal regulations state, a CSE meeting may be conducted without a parent ***only if*** "the public agency is unable to convince the parents that they should attend." 34 C.F.R. § 300.322 (d) (emphasis added). Here, the Plaintiffs never said they did not wish to attend the meeting, and it cannot be said the district could not convince them. Instead, the Plaintiffs missed one email and one phone call on the day of the meeting, and then lost the opportunity to participate in the formation of R.Z.'s IEP.

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

CSE meeting without a parent present ***only if*** "the school is unable to convince the parents that they should attend. ~~In this case~~Here, the school must have a detailed record of its attempts, and the results of those attempts, to arrange a mutually agreed on time and place." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(d)(3).

DOE's ~~flimsy~~feeble attempt to obtain the Plaintiffs' participation in the August 2021 CSE fell far short of what was legally required. DOE sent ***one*** email to the Plaintiffs less than seven days before the date and time DOE ***unilaterally*** set for the meeting. [R181-R186]. DOE never followed up when the Plaintiffs failed to respond because the email had gone to their junk folder. [R295-R296]. There was no attempt to hold the meeting at the requisite "mutually agreed-upon time and place." The DOE then made ***one*** phone call to the Plaintiffs ***on the date of the meeting***, and when no one answered the phone, proceeded to hold the meeting. [R187]. Even if the Plaintiffs had answered the phone call, such notice would not have satisfied the notice requirements of the IDEA. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(c)(1) (notice must be provided in writing and more than five days before the meeting).

~~Despite~~Along with the clearly insufficient notice, it was also a pure violation of IDEA for the district to hold the meeting in the absence of the Plaintiffs, without the Plaintiffs affirmatively refusing to participate. If the parent ***affirmatively opts not to participate***, the district ***must obtain the parent's consent*** to proceed. As federal regulations state, a CSE meeting may be conducted without a parent ***only if*** "the public agency is unable to convince the parents that they should attend." 34 C.F.R.

§ 300.322 (d) (emphasis added). Here, the Plaintiffs never said they did not wish to attend the meeting, and it cannot be said the district could not convince them. Instead, the Plaintiffs missed one email and one phone call on the day of the meeting, and then lost the opportunity to participate in the formation of R.Z.'s IEP.

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

It cannot be disputed that DOE did not provide the requisite notice of the August 2021 CSE meeting to the Plaintiffs, thereby failing in their obligations under the IDEA to ensure that the Plaintiffs could participate in the meeting. Yet SRO Bates refused to "review whether the district took sufficient steps to ensure the parents attendance at the CSE meeting" [R22, n.8] because he concluded that any alleged process violation could not rise to the denial of a FAPE. It is unclear where SRO Bates finds support for the contention that procedural violations, such as the one here, cannot rise to a denial of FAPE, especially after the Supreme Court in *Rowley* found that for the school district to provide a student with a FAPE, one thing it must do is ***comply with the procedural requirements set forth in the IDEA***. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07 (emphasis added). The ill-reasoned and counterfactual conclusion by SRO Bates, that procedural violations cannot rise to a denial of FAPE, should enjoy no deference from this Court.

It is impossible for SRO Bates to know what would have happened at the August 2021 CSE meeting had the Plaintiffs been given the proper opportunity to attend. SRO Bates conveniently ignores the fact that had the Plaintiffs participated in the meeting, they could have presented to the CSE the report by Dr. Rodriguez, the independent neuropsychologist who evaluated R.Z. after the March 2021 CSE meeting but whose report was completed before the August 2021 CSE meeting. As discussed above, Dr. Rodriguez's independent evaluation of R.Z. concluded that a 6:1:1 classroom in a D75 school would not provide R.Z. with a FAPE and would be unsafe for a non-ambulatory student such as R.Z. Instead, DOE relied on the flawed neuropsychological evaluation performed by Dr. Erik Moore, which misdiagnosed R.Z., mischaracterized R.Z.'s educational needs and abilities, and failed to make appropriate program recommendations for R.Z. because, *inter alia*, it disregarded the effect of R.Z. living in a bilingual household. [R718].

15

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

It cannot be disputed that DOE did not provide the requisite notice of the August 2021 CSE meeting to the Plaintiffs, ~~and failed~~thereby failing in their obligations under the IDEA to ensure that the Plaintiffs could participate in the meeting. Yet SRO Bates refused to "review whether the district took sufficient steps to ensure the parents attendance at the CSE meeting" [R22, n.8] because he concluded that any alleged process violation could not rise to the denial of a FAPE. It is unclear where SRO Bates finds support for the contention that procedural violations, such as the one here, cannot rise to a denial of FAPE, especially after the Supreme Court in *Rowley* found that for the school district to provide a student with a FAPE, one thing it must do is ***comply with the procedural requirements set forth in the IDEA***. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07~~. This~~ (emphasis added). The ill-reasoned and counterfactual conclusion by SRO Bates, that procedural violations cannot rise to a denial of FAPE, should enjoy no deference from this Court.

It is impossible for SRO Bates to know what would have happened at the August 2021 CSE meeting had the Plaintiffs been given the proper opportunity to attend. SRO Bates conveniently ignores the fact that ~~if~~had the Plaintiffs ~~had~~ participated in the meeting, they could have presented to the CSE the report by Dr. Rodriguez, the independent neuropsychologist who evaluated R.Z. after the March 2021 CSE meeting~~,~~ but whose report was completed before the August 2021 CSE meeting. As ~~fully set forth~~discussed above, Dr. Rodriguez's independent evaluation of R.Z. concluded that a 6:1:1 classroom in a D75 school would not provide R.Z. with a FAPE~~,~~ and would be unsafe for a non-_ambulatory student such as R.Z. Instead, DOE relied on the flawed neuropsychological evaluation performed by Dr. Erik Moore, which misdiagnosed R.Z., mischaracterized R.Z.'s educational needs and abilities,

_and failed to make appropriate program recommendations for R.Z. because, *inter alia*, it disregarded the effect of R.Z. living in a bilingual household. [R718].

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

The Plaintiffs were also denied any opportunity to object to or otherwise inquire into the change in R.Z.'s disability classification from "Traumatic Brain Injury" to "Multiple Disabilities." While the DOE claims the disability classification is "immaterial," that contention raises more questions than it answers. If it does not matter how a student is classified, why did DOE bother altering R.Z.'s classification at all, and why does DOE object so vigorously to changing it back to Traumatic Brain Injury?

Plaintiffs cannot, and should not be required to, speculate about the import of such a change. If R.Z. is better classified as "Multiple Disabilities," as DOE contends, DOE should be required to make the change at a duly convened CSE meeting, at which Plaintiffs are present and can present the reports of independent neuropsychologists (such as Dr. Rodriguez) who have personally evaluated R.Z. To allow DOE to make this change without including Plaintiffs in the discussion is a significant due process violation.

While DOE may now claim that Plaintiffs are merely "speculating" about what may have happened at the meeting, that is entirely the point—Plaintiffs are reduced to speculating about what could have occurred because they were denied the opportunity to participate in what actually occurred. This substantial procedural violation effectively denied R.Z. a FAPE for the 2021–2022 school year.

**II. iBRAIN WAS AN APPROPRIATE PLACEMENT FOR R.Z.**

Once the Plaintiffs have established the denial of a FAPE, Prong II of the *Burlington/Carter* test asks whether the private placement chosen by the Plaintiffs was appropriate. A private placement is appropriate if it is "reasonably calculated to enable the child to receive educational benefits," *C.F. ex-rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 82 (2d Cir. 2014), "such

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

The Plaintiffs were also denied any opportunity to object to or otherwise inquire into the change in R.Z.'s disability classification from "Traumatic Brain Injury" to "Multiple Disabilities." While the DOE claims the disability classification is "immaterial," that contention raises more questions than it answers. If it does not matter how a student is classified, why did DOE bother ~~changing~~altering R.Z.'s classification at all, and why does DOE object so vigorously to changing it back to Traumatic Brain Injury?

Plaintiffs cannot, and should not be required to, speculate about the import of such a change. If R.Z. is better classified as "Multiple Disabilities," as DOE contends, DOE should be required to make the change at a duly convened CSE meeting, at which Plaintiffs are present and can present the reports of independent neuropsychologists (such as Dr. Rodriguez) who have personally evaluated R.Z. To allow DOE to make this change without including Plaintiffs in the discussion is a significant due process violation.

While DOE may now claim that Plaintiffs are merely "speculating" about what may have happened at the meeting, that is entirely the point—Plaintiffs are reduced to speculating ~~on~~about what could have occurred because they were denied the opportunity to participate in what actually occurred. This substantial procedural violation effectively denied R.Z. a FAPE for the 2021–2022 school year.

**II. iBRAIN WAS AN APPROPRIATE PLACEMENT FOR R.Z.**

Once the Plaintiffs have established the denial of a FAPE, ~~which the Plaintiffs have done above,~~ Prong II of the *Burlington/Carter* test asks whether the private placement chosen by the Plaintiffs was appropriate. A private placement is appropriate if it is "reasonably calculated to enable the child to receive educational benefits," *C.F. ex-rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 82 ~~(~~(2d Cir. 2014), "such-

~~Text only in previous submission~~

Text in both

Text only in new submission

Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

that the placement is likely to produce progress, not regression." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 836 (2d Cir. 2014) (quotation marks omitted).

In determining whether a placement serves the educational needs of a child with a disability and is likely to produce progress, a court must consider the totality of the evidence, including "grades, test scores, regular advancement, or other objective evidence." *Id.; see also Gagliardo*, 489 F.3d at 112. The test for private placement "is that it is appropriate, and not that it is perfect." *C.L.*, 744 F.3d at 837 (quotation marks omitted). The standard for parents to demonstrate the propriety of a private placement is lower than the standard school districts must meet to demonstrate the provision of a FAPE. *Frank G.*, 459 F.3d at 364.

DOE does not meaningfully contest that iBRAIN was an appropriate placement for R.Z. Defendants do not point to any record evidence establishing that iBRAIN was inappropriate or did not produce academic progress in R.Z. Although Defendants point to several areas where Plaintiffs could have theoretically provided more evidence of R.Z.'s academic progress, the relevant inquiry is whether iBRAIN is appropriate, not whether iBRAIN is perfect. *C.L.*, 744 F.3d at 837. Indeed, there is sufficient evidence in the record that R.Z. received an appropriate education at iBRAIN. Dr. Rodriguez, the independent neuropsychologist, stated in her report that "[R.Z.] has made some significant qualitative improvements since beginning iBrain.... [R.Z.] has made clear qualitative improvements noticeable to both his academic and treatment team as well as to his parents at home." [R802]. Dr. Rodriguez concluded that "[R.Z.] should continue to receive the highly specialized instruction provided to him at iBrain. This school's integration of conductive education into their curriculum is an empirically supported program that has led to improved fine and gross motor control in children with cerebral palsy." [R803].

that the placement is likely to produce progress, not regression." *C.L. v. Scarsdale Union Free Sch. Dist*~~.~~, 744 F.3d 826, 836 (2d Cir. 2014) (quotation marks omitted).

In determining whether a placement serves the educational needs of a child with a disability and is likely to produce progress, a court ~~is to~~must consider the totality of the evidence, including "grades, test scores, regular advancement, or other objective evidence." *Id.; see also Gagliardo*, ~~v. Arlington Cent. Sch. Dist.~~ 489 F.3d ~~105,~~at 112 ~~(2d Cir. 2007)~~. The test for private placement "is that it is appropriate, and not that it is perfect." *C.L.*, 744 F.3d at 837~~,~~ (quotation marks omitted). The standard for parents to ~~show~~demonstrate the ~~appropriateness~~propriety of a private placement is lower than the standard school districts must meet to demonstrate the provision of a FAPE. *Frank G.*, ~~v. Bd. of Educ. of Hyde Park,~~ 459 F.3d ~~356,~~at 364 ~~(2d Cir. 2006)~~.

DOE does not meaningfully contest that iBRAIN was an appropriate placement for R.Z. Defendants do not point to any record evidence establishing that iBRAIN was inappropriate or did not produce academic progress in R.Z. Although Defendants point to several areas where Plaintiffs could have theoretically provided more evidence of R.Z.'s academic progress, the relevant inquiry is whether iBRAIN is appropriate, not whether iBRAIN is perfect. *C.L.*, 744 F.3d at 837. ~~And~~Indeed, there is sufficient evidence in the record that R.Z. received an appropriate education at iBRAIN. Dr. Rodriguez, the independent neuropsychologist, stated in her report that "[R.Z.] has made some significant qualitative improvements since beginning iBrain. [R.Z.] has made clear qualitative

~~significant qualitative improvements since beginning iBrain [R.Z.] has made clear qualitative~~

improvements noticeable to both his academic and treatment team as well as to his parents at home." [R802]. Dr. Rodriguez concluded that "[R.Z.] should continue to receive the highly specialized instruction provided to him at iBrain. This school's integration of conductive education into their curriculum is an empirically supported program that has led to improved fine and gross motor control in children with cerebral palsy." [R803].

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

In opposition, Defendants do not provide any expert testimony or other evidence that iBRAIN is not an appropriate educational setting for R.Z. Accordingly, Plaintiffs have satisfied Prong II of the *Burlington/Carter* test.

**III. THE EQUITIES FAVOR THE PLAINTIFFS**

The third Prong of the Burlington/Carter test requires the reviewing court to determine whether the equities favor reimbursement. *J.E. v. New York City Dep't of Educ.*, 229 F. Supp. 3d 223 (S.D.N.Y. 2017). Courts enjoy 'broad discretion' in considering the equitable factors to fashion relief after it has found a violation of the IDEA." *Id.* quoting *Florence County School Dist. Four*, 510 U.S. at 16. "Important to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA." *C.L.*, 744 F.3d at 840.

In her FOFD, IHO Ciccone found that while the equities favored the Plaintiffs, a reduction in the Plaintiffs' reimbursement award was warranted. IHO Ciccone attempted to justify this reimbursement reduction by claiming that the tuition costs were unreasonable and transportation costs were exorbitant [R48]—despite failing to cite any evidence in support of this contention.

Accordingly, IHO Ciccone's opinion on this issue is arbitrary and capricious and deserves no deference from this Court. IHO Ciccone did not document the costs of comparable programs or transportation services, and, having no idea what the market rate of either is, had no basis for unilaterally deciding that the amounts charged by iBRAIN, or Sisters Travel and Transportation Services were unreasonable, exorbitant, or excessive. Besides having no comparable costs on which to base her assertions, her conclusions are irrational. The "unreasonableness" of iBRAIN's tuition appears to hinge on whether the service providers were iBRAIN employees or independent contractors [R48], a distinction that makes sense only if employees work for free while

In opposition, Defendants do not provide any expert testimony or other evidence that iBRAIN is not an appropriate educational setting for R.Z. Accordingly, Plaintiffs have satisfied Prong II of the *Burlington/Carter* test.

**III. THE EQUITIES FAVOR THE PLAINTIFFS**

The third Prong of the Burlington/Carter test requires the reviewing court to determine whether the equities favor reimbursement. *J.E. v. New York City Dep't of Educ.*, 229 F. Supp. 3d 223 (S.D.N.Y. 2017). Courts enjoy 'broad discretion' in considering the equitable factors to fashion relief after it has found a violation of the IDEA." *Id*~~.~~, quoting *Florence ~~Cnty.~~ County School~~Sch.~~ Dist. Four~~ v. Carter By & Through Carter~~*, 510 U.S. ~~7,~~at 16~~, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993)~~. "Important to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA." ~~C.L., 744 F.3d at 840~~*C.L.*, 744 F.3d at 840.

In her ~~Findings of Fact and Decision, Impartial Hearing Officer ("~~FOFD, IHO~~")~~ Ciccone found that while the equities favored the Plaintiffs~~ but still reduced~~, a reduction in the Plaintiffs' reimbursement award ~~because she decided, with no evidence, that~~was warranted. IHO Ciccone attempted to justify this reimbursement reduction by claiming that the tuition costs were unreasonable and transportation costs were exorbitant~~.~~ [R48]~~.~~—despite failing to cite any evidence in support of this contention.

Accordingly, IHO Ciccone's opinion on this issue is arbitrary and capricious and deserves no deference from this Court. IHO Ciccone did not document the costs of comparable programs or transportation

services, and, having no idea what the market rate of either is, had no basis for unilaterally deciding that the amounts charged by iBRAIN, or Sisters Travel and Transportation Services were unreasonable, exorbitant, or excessive. Besides having no comparable costs on which to base her ~~conclusions~~assertions, her conclusions are irrational. The "unreasonableness" of iBRAIN's tuition appears to hinge on whether the ~~services~~service providers were iBRAIN employees or independent contractors [R48], a distinction that makes

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

independent contractors are compensated for their services. She also concluded that the contract between Plaintiffs and Sisters Travel and Transportation Services was "voidable" if the latter had not provided monthly invoices for its services to the former, as that would have constituted a breach of contract. [R48]. This conclusion is erroneous. Failure to timely invoice a customer for services rendered does not mean that those services become complimentary.

Under Prong III of the *Burlington/Carter* framework, reimbursement can be reduced or denied only if the parent fails to raise the appropriateness of an IEP in a timely manner, fails to make the child available for evaluations, or otherwise acts unreasonably. *See C.L.*, 744 F.3d at 840. As discussed below, the balance of equities favors the cooperative Plaintiffs, who gave Defendants every opportunity to provide R.Z. with a FAPE. Because there is no evidence that the costs are unreasonable or excessive, and because the cost of the private school should not even be considered when balancing the equities under Prong I, the Plaintiffs are entitled to full reimbursement of the total amount of the tuition, services, and transportation for which they contracted.

*A. The Equities Favor the Plaintiffs Because They Cooperated with the DOE Throughout the IEP Process*

To warrant the denial or reduction of reimbursement, a parent's actions must be so egregiously obtrusive that they effectively deny the school district the ability to create or amend an IEP, which would, in turn, deny the subject student a FAPE. For example, in *M.C. ex-rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 68 (2d Cir. 2000), the parent-plaintiffs arranged for private services and then sought reimbursement without ever notifying the school district that they had rejected the district's proposed IEP. Similarly, in *Thies v. New York City Bd. of Educ.*, No. 07 CIV.2000(RMB), 2008 WL 344728 (S.D.N.Y. February 4, 2008), cited by DOE in its Memorandum of Law in Support of its Motion for Summary Judgment, Dkt. No. 32, at page 23,

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

independent contractors are ~~paid~~compensated for their services. She also ~~concludes~~concluded that the contract between Plaintiffs and Sisters Travel and Transportation Services was "voidable" if the latter had not provided monthly invoices for its services to the former, ~~because~~as that would have ~~been~~constituted a breach of contract. [R48]. This conclusion is ~~mistaken~~erroneous. Failure to timely invoice a customer for services rendered does not mean that those services ~~are now free~~become complimentary.

Under Prong III of the *Burlington/Carter* framework, reimbursement can be reduced or denied only if the parent fails to raise the appropriateness of an IEP in a timely manner, fails to make the child available for evaluations, or otherwise acts unreasonably. *See C.L.*, 744 F.3d at 840. As ~~more fully set forth~~discussed below, the balance of equities favors the cooperative Plaintiffs, who gave Defendants every opportunity to provide R.Z. with a FAPE. Because there is no evidence that the costs are unreasonable or excessive, and because the cost of the private school should not even be considered when balancing the equities under Prong I, the Plaintiffs are entitled to full reimbursement of the total amount of the tuition, services, and transportation for which they contracted.

*A. The Equities Favor the Plaintiffs Because They Cooperated with the DOE Throughout the IEP Process*

To warrant the denial or reduction of reimbursement, a parent's actions must be so ~~obstructive~~egregiously obtrusive that they effectively deny the school district the ability to create or amend an IEP, which would ~~provide~~, in turn, deny the subject student ~~with~~ a FAPE. For example, in *M.C. ex-rel. Mrs.*

*C. v. Voluntown Bd. of Educ.*, ~~226 F.3d 60, 68 (2d Cir.~~226 F.3d 60, 68 (2d Cir. 2000), the parent-plaintiffs arranged for private services and then sought reimbursement without ever notifying the school district that they had rejected the district's proposed IEP. Similarly, in *Thies v. New York City Bd. of Educ.*, No. ~~07 CIV.2000(RMB), 2008 WL 344728 (S.D.N.Y. Feb~~07 CIV.2000(RMB), 2008 WL 344728 (S.D.N.Y. February 4, 2008), cited by DOE in its Memorandum of Law in Support of its Motion for Summary Judgment, Dkt. No. 32, at pag

~~Text only in previous submission~~

Text in both

Text only in new submission

Text in both, but has been moved

the plaintiffs placed their child in a private school before the DOE could propose a public-school location to implement their child's IEP.

By contrast, the Plaintiffs here cooperated with DOE throughout the process, attending CSE meetings, producing R.Z. for examinations, and duly notifying DOE of their rejection of the proposed school location and their intention to place R.Z. in private programming before they enrolled R.Z. at iBRAIN. The only behavior DOE can point to as "unreasonable" is Plaintiffs' decision to reject DOE's proposed school location and keep R.Z. at iBRAIN. Yet the decision was no doubt justified, given that the district's proposed school location was inappropriate for R.Z. Characterizing the Plaintiffs' actions as "unreasonable" here would make all families who reject DOE's proposed public-school location "unreasonable"—no matter how inappropriate—in favor of private programming.

To proceed with Prong III of the *Burlington/Carter* analysis, plaintiffs must show that the school district denied their child a FAPE. If unilaterally placing their child in private programming after the school district did not provide an appropriate public education is enough to deny a family reimbursement, then no family would ever be reimbursed for private services. Although this is the result DOE would prefer, this is not what IDEA intended, and DOE's implication to the contrary should be explicitly rejected.

***B. The "Reasonableness of the Private School Tuition" is Not a Proper Factor to Consider, and, in Any Event, DOE Has Not Established That iBRAIN's Tuition is Unreasonable***

DOE contends that "Courts and hearing officers may also consider the reasonableness of the private school tuition" (ECF No. 32 at pg. 23) and cites two cases in support: *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014) and *M.P. v. New York City Dep't of Educ.*, No. 21 CIV. 7439 (LGS), 2022 WL 4109774 (S.D.N.Y. September 8, 2022). However, although both cases reference the reasonableness of private school tuition as a factor in balancing the

the plaintiffs placed their child in a private school before the DOE could propose a public-school location to implement their child's IEP.

~~In~~By contrast, the Plaintiffs here cooperated with DOE throughout the process, attending CSE meetings, producing R.Z. for examinations, and duly notifying DOE of their rejection of the proposed school location and their intention to place R.Z. in private programming before they enrolled R.Z. at iBRAIN. The only behavior DOE can point to as "unreasonable" is Plaintiffs' decision to reject DOE's proposed school location and keep R.Z. at iBRAIN. Yet ~~this~~the decision was no doubt justified, given that the district's proposed school location was inappropriate for R.Z. Characterizing the Plaintiffs' actions as "unreasonable" here would make all families who reject DOE's proposed public-school location "unreasonable"—no matter how inappropriate—in favor of private programming.

To ~~get to~~proceed with Prong III of the *Burlington/Carter* analysis, plaintiffs must show that the school district denied their child a FAPE. If unilaterally placing their child in private programming after the school district did not provide an appropriate public education is enough to deny a family reimbursement, then no family would ever be reimbursed for private services. Although this is the result DOE would prefer, this is not what IDEA intended, and DOE's implication to the contrary should be explicitly rejected.

***B. The "Reasonableness of the Private School Tuition" is Not a Proper Factor to Consider, and, ~~In~~in Any Event, DOE Has Not Established That iBRAIN's Tuition is Unreasonable***

DOE contends that "Courts and hearing officers may also consider the reasonableness of the private school tuition" (ECF No. 32 at pg. 23) and cites two cases in support: *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014) and *M.P. v. New York City Dep't of Educ.*, No. 21 CIV. 7439 (LGS), 2022 WL 4109774 (S.D.N.Y. ~~Sept.~~ September 8, 2022). However, although ~~both~~

both cases reference the reasonableness of private school tuition as a factor in balancing the

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

equities, neither case looked to the reasonableness of the private school's tuition at issue to balance the equities. *E.M.* does not cite a case to support the proposition that the reasonableness of the school's tuition should be considered, and *M.P.* cites only *E.M.* to that end. A review of the cases that cite *E.M.* demonstrates that there is *not one case in which the unreasonableness of the tuition was used to reduce reimbursement.* Considering that *E.M.* was decided almost a decade ago, this factor, which is stated as dicta and has never been applied, should not be considered in balancing the equities here.

But even if the reasonableness of iBRAIN's tuition were to be considered, DOE has not established that the tuition is, as it claims, "excessive and unreasonable." ECF No. 32 at pg. 24. DOE provides no evidence in support of this claim, aside from repeatedly calling the tuition at iBRAIN "excessive" and citing IHO Ciccone's opinion, which, as discussed above, is arbitrary and capricious—and should be afforded no deference from this Court. Defendants fail to recognize that iBRAIN provides an intensive and full-service program for students with severe and demanding health management needs. Although the tuition may seem high to a layperson unfamiliar with the tuition these academies charge, it reflects the costs of providing the high-quality and comprehensive services necessary to educate some of New York City's most medically fragile children with disabilities. DOE does not provide tuition for alternative or similar programs within New York City and, therefore, has provided no evidence that the tuition that iBRAIN charges is excessive.

For the same reasons, DOE's claim that the transportation services the Plaintiffs contracted for were "also excessive and unreasonable" must likewise fail. The conspicuous lack of evidence presented to support this claim is even more absurd here, as DOE provides similar transportation services (or contracts with private companies to provide the services) to children throughout New

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

equities, neither case looked to the reasonableness of the private school's tuition at issue to balance the equities. *E.M.* does not cite a case ~~for~~to support the proposition that the reasonableness of the school's tuition should be considered, and *M.P.* cites only *E.M.* ~~for~~to that ~~standard~~end. A review of the cases that cite

*E.M.* ~~shows~~demonstrates that there is *not one case in which the unreasonableness of the tuition was used to reduce reimbursement.* Considering that *E.M.* was decided almost a decade ago, this factor, which is stated as dicta and has never been applied, should not be considered in balancing the equities here.

But even if the reasonableness of iBRAIN's tuition ~~was~~were to be considered, DOE has not established that the tuition is, as it claims, "excessive and unreasonable." ECF No. 32 at pg. 24. DOE provides no evidence ~~for~~in support of this claim, ~~except for~~aside from repeatedly calling the tuition at iBRAIN "excessive" and citing IHO Ciccone's opinion, which, as ~~fully set forth~~discussed above, is arbitrary and capricious— and should be afforded no deference from this Court. Defendants fail to recognize that iBRAIN provides an intensive and full-service program for students with severe and demanding health management needs. Although the tuition may seem high to a layperson unfamiliar with the tuition these academies charge, it reflects the costs of providing the high- quality and comprehensive services necessary to educate some of New York City's most medically fragile children with disabilities. DOE does not provide tuition for alternative ~~and~~or similar programs within

New York City and, therefore, has provided no evidence that the tuition that iBRAIN charges is excessive.

For the same reasons, DOE's claim that the transportation services the Plaintiffs contracted for were "also excessive and unreasonable" must ~~also~~likewise fail. ~~DOE's failure to submit~~The conspicuous lack of evidence presented to support ~~its~~this claim is even more absurd here, as DOE provides similar transportation services (or contracts with private companies to provide the services) to children throughout New-

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

York City—and therefore has access to many contracts for such services. To support its argument that the cost of transporting R.Z. to and from school is excessive, the DOE could submit any one of such contracts. Despite access to such "evidence" of the "excessive and unreasonable" cost of transporting R.Z., DOE comes empty-handed—with no evidence aside from its own conviction.

DOE, of course, may develop its own appropriate specialized program for children with traumatic brain injuries like R.Z. and provide transportation to and from such a program. In the absence of an appropriate program, however, IDEA allows parents to select appropriate private services and then seek payment for those services from DOE with the money it receives from the ***federal government***. The IDEA, however, does not allow a school district to refuse to provide services to children like R.Z., and then dictate the price it is willing to pay third parties who provide those services. If DOE can provide these services at a lower cost, DOE should be encouraged to do so. But until DOE chooses to do so, this Court cannot allow DOE to eschew its duties and obligations under federal law simply because DOE would rather keep the money it receives to implement IDEA than provide it to families like the Plaintiffs here.

**CONCLUSION**

Plaintiffs have tried, for years, to have R.Z. educated at a D75 DOE school, and have been let down by DOE each year. Even when DOE has created an adequate IEP, DOE has consistently failed to provide R.Z. with the services his IEP requires. After years of failure, it is no longer "speculative" as to whether DOE will provide R.Z. with a FAPE—DOE is simply incapable of doing so. After it has been proven DOE cannot (or will not) provide R.Z. with a FAPE, DOE cannot then protest the cost of third-party providers who are doing so. Any allegation that the cost of educating or transporting R.Z. is excessive or exorbitant must be based on facts and evidence. DOE has submitted no evidence that iBRAIN or Sisters Travel and Transportation Services costs

*Compared with* Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

York City~~,~~ — and therefore has access to many contracts for such services. To support its argument that the cost of transporting R.Z. to and from school is excessive, the DOE could submit any one of such contracts. Despite access to such "evidence" of the "excessive and unreasonable" cost of transporting R.Z., DOE comes empty-handed— with no evidence ~~except for~~aside from its own conviction.

DOE, of course, may develop its own appropriate specialized program for children with traumatic brain injuries like R.Z. and provide transportation to and from such a program. In the absence of an appropriate program, however, IDEA allows parents to select appropriate private services and then seek payment for those services from DOE with the money it receives from the ***federal government***. The IDEA, however, does not allow a school district to refuse to provide services to children like R.Z.~~.~~, and then dictate the price it is willing to pay third parties who provide those services. If DOE can provide these services at a lower cost, DOE should be encouraged to do so. But until DOE ~~does~~chooses to do so, this Court cannot allow DOE to ~~avoid~~eschew its duties and obligations under federal law~~,~~ simply because DOE would rather keep the money it receives to implement IDEA~~, rather~~ than ~~give~~provide it to families like the Plaintiffs here.

**CONCLUSION**

Plaintiffs have tried, for years, to have R.Z. educated at a D75 DOE school, and have been let down by DOE each year. Even when DOE has created an adequate IEP, DOE has consistently failed to provide R.Z. with the services his IEP requires. After years of failure, it is no longer "speculative" as to whether DOE will provide R.Z. with a FAPE—DOE is simply incapable of doing so. ~~And after~~After it has been proven DOE cannot (or will not) provide R.Z. with a FAPE, DOE cannot then protest the cost of third-party providers who are doing so. Any allegation that the cost of educating or transporting R.Z. is excessive or exorbitant must be based on facts and evidence. DOE has submitted no evidence that iBRAIN or Sisters Travel and Transportation Services costs-

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

are unreasonable, exorbitant, excessive, or otherwise out of line with prevailing market prices. Indeed, because balancing the equities strongly favors the Plaintiffs, they are entitled to reimbursement of the full amount they contracted to pay without reduction.

Accordingly, the Court should grant Plaintiffs' motion for reconsideration, as it overlooked relevant and controlling principles of law and facts, and afforded SRO Bates' decision deference that it did not deserve; reverse SRO Bates' decision and finding that DOE offered R.Z. a FAPE for the 2021–2022 school year; grant Plaintiffs' motion for summary judgment, finding that DOE did not provide R.Z. with a FAPE during the 2021–2022 school year, that iBRAIN was an appropriate unilateral placement, that the equities favor the Plaintiffs; order DOE to reimburse Plaintiffs, or directly pay R.Z.'s educational providers, tuition and all related expenses, including transportation; and grant such other, further, and different relief as the Court deems just, proper, and equitable.

Dated: February 16, 2024
New York, New York

Respectfully submitted,
Brain Injury Rights Group, Ltd.
*Attorneys for the Plaintiff(s)*

By: /S/
Rory J. Bellantoni, Esq. (RB2901)
300 East 95th Street, Suite #130
New York, New York 10128
rory@pabilaw.org

Cc: All Counsel of record via ECF.

Compared with Memorandum of Law in Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Further Support for Motion for Summary Judgment (Dkt. #33)

are unreasonable, exorbitant, excessive, or otherwise out of line with prevailing market prices. ~~And~~Indeed, because balancing the equities strongly favors the Plaintiffs, they are entitled to reimbursement of the full amount they contracted to pay ~~with no reductions~~without reduction.

Accordingly, ~~this~~the Court should ~~overrule~~grant Plaintiffs' motion for reconsideration, as it overlooked relevant and controlling principles of law and facts, and afforded SRO Bates' decision deference that it did not deserve; reverse SRO Bates' decision and finding that DOE offered R.Z. a FAPE for the 2021–2022 school year~~. This Court should further find~~; grant Plaintiffs' motion for summary judgment, finding that DOE did not provide R.Z. with a FAPE during the 2021–2022 school year, that iBRAIN was an appropriate unilateral placement~~ and~~, that the equities favor the Plaintiffs~~, and~~; order DOE to reimburse Plaintiffs ~~for~~, or directly pay R.Z.'s educational providers, tuition and all related expenses, including transportation; and grant such other, further, and different relief as the Court deems just, proper, and equitable.

Dated: ~~July 3, 2023~~February 16, 2024
New York, New York

Respectfully submitted,
Brain Injury Rights Group, Ltd.
*Attorneys for the Plaintiff(s)*

By: /S/
Rory J. Bellantoni, Esq.
(RB2901) 300 East 95th Street,
Suite #130
New York, New York 10128
rory@pabilaw.org

Cc: All Counsel of record via ECF.

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

# EXHIBIT 2

Reply Memorandum of Law in Further Support of Motion for Reconsideration (Dkt. #47)

**PRELIMINARY STATEMENT**

EDWIN and ROSA ZAYAS ("Plaintiffs") submit this Reply in further support of their Motion for Reconsideration and in response to the opposition of Defendants DAVID BANKS and the NEW YORK CITY DEPARTMENT OF EDUCATION (collectively, "Defendants" or "DOE"). Plaintiffs contend that reconsideration is necessary, as the Court overlooked relevant law and pertinent facts in rendering its decision. Specifically, Plaintiffs seek reconsideration of the Court's Order entered on January 19, 2024. [ECF No. 39], which denied Plaintiffs' Motion for Summary Judgment seeking funding for R.Z.'s placement at iBRAIN for the 2021–2022 school year.

In the due process proceedings brought under the Individuals with Disabilities Education Act ("IDEA"), State Review Officer ("SRO") Justyn P. Bates reversed the decision of Impartial Hearing Officer ("IHO") Diane Ciccone,[1] finding DOE provided R.Z. with a free appropriate public education ("FAPE") for the 2021–2022 school year, despite the fact that R.Z.'s assigned placement was independently determined to be unsafe. Indeed, Dr. Isabella Rodriguez conducted an Independent Educational Evaluation ("IEE") from May to early June 2021 and determined that, based on her extensive professional experience and observation of D75 classrooms, a special 6:1:1 class that included autistic children would be detrimental—even dangerous—to R.Z.'s well-being. [R 803]. In addition to her written evaluation, Dr. Rodriguez testified to this effect in the underlying administrative proceedings. [R 258–261]. While Plaintiffs alleged DOE's Individualized Education Program ("IEP") was deficient for several reasons—including lack of music therapy, lack of AT services, and inappropriate grouping—DOE's failure to recommend a safe placement for R.Z., who has severe disabilities rendering him especially vulnerable, was a

[1] IHO Ciccone correctly found DOE denied R.Z. a FAPE.

*Compared with* Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

**PRELIMINARY STATEMENT**

~~Plaintiffs~~ EDWIN and ROSA ZAYAS~~, as Parents and Natural Guardians of R.Z., and Individually,~~ ("Plaintiffs") submit this ~~Memorandum of Law under Fed. R. Civ. P. 59(e), Rule 60(b), and Local Rule 6.3.[1] A motion filed under Fed. R. Civ. P. 59(e) must be filed no later than 28 days after the entry of the judgment. A motion filed under Local Civil Rule 6.3 for the Southern and Eastern Districts of New York permits a party to move for~~ Reply in further support of their Motion for Reconsideration and in response to the opposition of Defendants DAVID BANKS and the NEW YORK CITY DEPARTMENT OF EDUCATION (collectively, "Defendants" or ~~Reargument within 14 days after the entry of the Court's determination of the overlooked "controlling law or factual matters" that had been previously put before it.~~"DOE"). Plaintiffs contend that reconsideration is necessary, ~~given~~as the Court overlooked relevant law and pertinent facts ~~not considered by this Court~~ in rendering its decision. Specifically, ~~the~~ Plaintiffs seek reconsideration of ~~this~~the Court's Order entered on January 19, 2024. ~~[ECF No. 39].~~[ECF No. 39], which denied ~~the~~ Plaintiffs' Motion for Summary Judgment ~~that would have required the New York City Department of Education ("DOE") to directly fund~~seeking funding for R.Z.'s ~~tuition~~placement at iBRAIN for the 2021–2022 ~~extended~~ school year ~~("ESY") at the~~

In the due process proceedings brought under the Individuals with Disabilities Education Act ("IDEA"), State Review Officer ("SRO") Justyn P. Bates reversed the decision of Impartial Hearing Officer ("IHO") Diane Ciccone,[1] finding DOE provided R.Z. with a free appropriate public education ("FAPE") for the 2021–2022 school year, despite the fact that R.Z.'s assigned placement was independently determined to be unsafe. Indeed, Dr. Isabella Rodriguez conducted an Independent Educational Evaluation ("IEE") from May to early June 2021 and determined that, based on her extensive professional experience and observation of D75 classrooms, a special 6:1:1 class that included autistic children would be detrimental—even dangerous—to R.Z.'s well-being. [R 803]. In addition to her written evaluation, Dr. Rodriguez testified to this effect in the underlying administrative proceedings. [R 258–261]. While Plaintiffs alleged DOE's Individualized Education Program ("IEP") was deficient for several reasons—including lack of music therapy, lack of AT services, and inappr[...] safe placement for R.Z., who has severe disabi[...]

[1] IHO Ciccone correctly found DOE denied R.Z. a FAP[...]

~~Text only in previous submission~~

Text in both

Text only in new submission

Text in both, but has been moved

Reply Memorandum of Law in Further Support of Motion for Reconsideration (Dkt. #47)

*Compared with* Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

non-starter.

How can an educational placement/program determined by an expert to be highly inappropriate to the extent that it "could place the Student in danger" [R 46–47], ever be considered a FAPE under IDEA? The answer is simple: it clearly cannot be. Plaintiffs submit that the Court overlooked the nature and weight of the evidence that DOE's proposed placement was inappropriate because it endangered R.Z. As such, the Court should grant Plaintiffs' Motion for Reconsideration, and, upon such reconsideration, grant Plaintiffs' Motion for Summary Judgment.

**ARGUMENT**

**I. PLAINTIFFS' MOTION SHOULD BE GRANTED IN ITS ENTIRETY BECAUSE THE COURT OVERLOOKED RELEVANT LAW AND PERTINENT FACTS SHOWING R.Z. WAS DENIED A FAPE**

Defendants contend that Plaintiffs have failed to identify any relevant law or facts the Court overlooked, and are attempting to re-litigate previously decided questions. This is not the case. In denying the Plaintiffs' motion for summary judgment and granting the Defendants' cross-motion, the Court erred in deferring to SRO Bates' Decision and overlooking apposite and well-established case law. SRO Bates incorrectly interpreted Second Circuit precedent in finding that DOE provided R.Z. with a FAPE during the 2021–2022 school year. Even more alarmingly, SRO Bates exhibited a clear bias in grossly mischaracterizing the testimony of Dr. Rodriguez, an independent clinical psychologist, while ignoring corroborative testimony offered by witnesses affiliated with the DOE that supported Dr. Rodriguez's claims.

In the Second Circuit, the degree of deference to be given to an SRO opinion is based on "the quality of the opinion and the court's institutional competence." *C.F. ex-rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (citing *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012)); *see also T.C. v. N.Y.C. Dep't of Educ.*, 15-CV-

non-starter.

How can an educational placement/program determined by an expert to be highly inappropriate to the extent that it "could place the Student in danger" [R 46–47], ever be considered a FAPE under IDEA? The answer is simple: it clearly cannot be. Plaintiffs submit that the Court overlooked the nature and weight of the evidence that DOE's proposed placement was inappropriate because it endangered R.Z. As such, the Court should grant Plaintiffs' Motion for Reconsideration, and, upon such reconsideration, grant Plaintiffs' Motion for Summary Judgment.

**ARGUMENT**

**I. PLAINTIFFS' MOTION SHOULD BE GRANTED IN ITS ENTIRETY BECAUSE THE COURT OVERLOOKED RELEVANT LAW AND PERTINENT FACTS SHOWING R.Z. WAS DENIED A FAPE**

Defendants contend that Plaintiffs have failed to identify any relevant law or facts the Court overlooked, and are attempting to re-litigate previously decided questions. This is not the case. In denying the Plaintiffs' motion for summary judgment and granting the Defendants' cross-motion, the Court erred in deferring to SRO Bates' Decision and overlooking apposite and well-established case law. SRO Bates incorrectly interpreted Second Circuit precedent in finding that DOE provided R.Z. with a FAPE during the 2021–2022 school year. Even more alarmingly, SRO Bates exhibited a clear bias in grossly mischaracterizing the testimony of Dr. Rodriguez, an independent clinical psychologist, while ignoring corroborative testimony offered by witnesses affiliated with the DOE that supported Dr. Rodriguez's claims.

In the Second Circuit, the degree of deference to be given to an SRO opinion is based on "the quality of the opinion and the court's institutional competence." *C.F. ex-rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (citing *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 244 (2d Cir. 2012)); *see also T.C. v. N.Y.C. Dep't of Educ.*, 15-CV-

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Reply Memorandum of Law in Further Support of Motion for Reconsideration (Dkt. #47)

*Compared with* Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

3477 (VEC), 2016 U.S. Dist. LEXIS 42545, at *15–16 (S.D.N.Y. March 30, 2016). Here, Plaintiffs contend the Court should afford the SRO no deference, as the SRO's opinion is not well-reasoned based on the relevant law and pertinent facts.

Furthermore, the Court has discretion to consider equitable factors relating to the reasonableness of the Plaintiffs' actions when fashioning relief.[2] While courts may not substitute their notions of "sound educational policy" for those of the school authorities they review, ***a court accords no particular deference to an SRO on pure questions of law.*** *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006); *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998); *see also Carmel Cent. Sch. Dist. v. V.P. ex-rel. G.P.*, 373 F. Supp. 2d 402, 408 (S.D.N.Y. 2005), *aff'd sub nom. Carmel Cent. Sch. Dist. v. V.P.*, 192 F. App'x 62 (2d Cir. 2006) ("[A]n SRO's determination of a pure question of law is not subject to deference"); *Reid ex-rel. Reid v. D.C.*, 401 F.3d 516, 521 (D.C. Cir. 2005) (no deference is to be given to a hearing officer's conclusion where that conclusion "raises an issue of statutory construction, a pure question of law that courts review de novo").

Given the foregoing, the Court erred in granting SRO Bates' decision more deference than deserved. Considering equities is a duty that Congress tasked the Court to perform without unwarranted deference to administrative officers. Plaintiffs are entitled to summary judgment, as the record shows DOE denied R.Z. a FAPE for the 2021–2022 ESY, and the Parent's unilateral placement at iBRAIN was appropriate.

**A. Plaintiffs Have Shown that the Court Overlooked Material Facts Demonstrating That the IEP Was Defective and R.Z. Was Denied a FAPE**

New York State regulations implementing IDEA mandate that if a student's IEP requires

[2] *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 360 (S.D.N.Y. 2009); *see also Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007), citing *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 16 (1993).

~~The~~LEXIS 42545, at *15–16 (S.D.N.Y. March 30, 2016). Here, Plaintiffs contend the Court should afford the SRO no deference, as the SRO's opinion is not well-reasoned based on the relevant law and pertinent facts.

Furthermore, the Court has discretion to consider equitable factors relating to the reasonableness of the Plaintiffs' actions when fashioning relief.~~[1]~~ ~~And while~~[2] While courts may not substitute their notions of ~~'sound~~"sound educational ~~policy'~~policy" for those of the school authorities they review, ***a court accords no particular deference to*** ~~a State Review Officer (“~~***an SRO***~~”)~~ ***on pure questions of law.*** *Arlington Cent. Sch. Dist. v. L.P.*, ~~421 F. Supp. 2d 692, 696 (~~421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006); *Walczak v. Fla. Union Free Sch. Dist.*, ~~142 F.3d 119, 129~~142 F.3d 119, 129 (2d Cir. 1998); *see also Carmel Cent. Sch. Dist. v. V.P. ex-rel. G.P.*, 373 F. Supp. 2d 402, 408 (S.D.N.Y. 2005), *aff'd sub nom. Carmel Cent. Sch. Dist. v. V.P.*, ~~373~~192

~~F. Supp. 2d 402, 408 (S.D.N.Y.~~ F. App'x 62 (2d Cir.~~2005), *aff'd sub nom. Carmel Cent. Sch. Dist. v. V.P.*, 192 F. App'x 62 (2d Cir.~~ 2006) ("[A]n SRO's determination of a pure question of law is not subject to deference"); *Reid ex-rel. Reid v. D.C.*, ~~401 F.3d 516, 521 (D.C. Cir.~~401 F.3d 516, 521 (D.C. Cir. 2005) (no deference is to be given to a hearing officer's conclusion where that conclusion "raises an issue of statutory construction, a pure question of law that courts review de novo").

Given the foregoing, the Court erred in granting ~~the unfounded~~ SRO ~~Decision~~Bates' decision more deference than ~~it rightfully~~ deserved. Considering equities is a duty that Congress ~~has~~ tasked ~~this~~

Court to perform without unwarranted deference to ~~the decisions of the SRO~~ administrative officers. Plaintiffs are entitled to ~~Summary Judgment~~summary judgment, as the record shows ~~that~~ DOE denied R.Z. a FAPE for the 2021–2022 ESY, and the Parent's unilateral placement at iBRAIN was appropriate.

**A. ~~§ 1400[d][1][A]-[B] and *Bd. of Educ. of Hendrick Hudson Cent.*~~ Plaintiffs Have Shown that the Court Overlooked Material Facts Demonstrating That the IEP Was Defective and R.Z. Was D**

~~Text only in previous submission~~

Text in both

Text only in new submission

Text in both, but has been moved

Reply Memorandum of Law in Further Support of Motion for Reconsideration (Dkt. #47)

them to be placed in a special education class, "the size and composition of a class shall be based **on the similarity of the individual needs of the students** according to (i) levels of academic or educational achievement and learning characteristics; (ii) levels of social development; (iii) levels of physical development; and (iv) the management needs of the students in the classroom. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(2)(i)-(iv) (emphasis added).

R.Z.'s proposed IEP for the 2021–2022 school year placed him in a 6:1:1 classroom—a class with a maximum of six students, with one special education teacher and one group paraprofessional—at the D75 Horan School ("Horan School"). [R 537]. At the time of DOE's offer, Plaintiffs had received a report by Dr. Isabel Rodriguez, an independent neuropsychologist who had examined R.Z., which found "a 6:1:1 District 75 classroom placement" such as the one proposed by DOE at the Horan School could not "…provide the high degree of individualized attention including two-person transfer, nursing care, intense rehabilitation, and technology-facilitated one-to-one instruction that [R.Z.] requires in order to make functional gains." [R803].[3] The report also stated, "D75 programs often include children with autism spectrum disorder diagnoses, a clinical presentation that requires different academic and supportive needs than those needed of a child with an acquired brain injury." [R803]. Dr. Rodriguez recommended that "[R.Z.] should remain in his current 6:1:1 special educational setting at iBrain for the remainder of his education." [R803]. Accordingly, the Plaintiffs rejected DOE's proposed school location and re-enrolled R.Z. at iBRAIN.

SRO Bates claimed Dr. Rodriguez's testimony was "rife with generalizations and unsupported hypotheticals … and stereotypes of students with different disability classifications…" [R32-R33]. In doing so, ***SRO Bates ignored the confirmatory testimony of Michelle Lefaivre, the***

[3] Dr. Rodriguez's entire evaluation can be found at R797-R809.

4

*Compared with* Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

them to be placed in a special education class, "the size and composition of a class shall be based **on the similarity of the individual needs of the students** according to (i) levels of academic or educational achievement and learning characteristics; (ii) levels of social development; (iii) levels of physical development; and (iv) the management needs of the students in the classroom. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(2)(i)-(iv) (emphasis added). ~~N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(2)(i)-(iv).~~

R.Z.'s proposed IEP for the 2021–2022 school year ~~requires him to be~~ placed him in a 6:1:1 classroom—a class ~~having~~with a maximum of six students, with one special education teacher and one group paraprofessional~~. For the 2021–2022 ESY, DOE offered R.Z. a placement in one such classroom~~—at the D75 Horan School ("Horan School"). [~~R537~~R 537]. At the time of DOE's offer, ~~the~~ Plaintiffs had received a report by Dr. Isabel Rodriguez, an independent neuropsychologist who had examined R.Z., ~~that clearly stated that~~which found "a 6:1:1 District 75 classroom placement" such as the one proposed by DOE at the Horan School ~~"cannot~~ could not "…provide the high degree of individualized attention including two-person transfer, nursing care, intense rehabilitation, and technology- facilitated one-to-one instruction that [R.Z.] requires in order to make functional gains." [R803].[3] The report also stated~~ that~~, "D75 programs often include children with autism spectrum disorder diagnoses, a clinical presentation that requires different academic and supportive needs than those needed of a child with an acquired brain injury." [R803]. Dr. Rodriguez recommended that "[R.Z.] should remain in his current 6:1:1 special educational setting at iBrain for the remainder of his education." [R803]. Accordingly, the Plaintiffs rejected DOE's proposed school location and re-_enrolled R.Z. at iBRAIN.

unsupported hypotheticals … and stereotypes of students with different disability classifications…" [R32-R33]. In doing so, ***SRO Bates ignored the confirmatory testimony of Michelle Lefaivre, the***

[3] Dr. Rodriguez's entire evaluation can be found at R797-R809.

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Reply Memorandum of Law in Further Support of Motion for Reconsideration (Dkt. #47)

***Horan School assistant principal***, who also testified at the underlying administrative hearing. Ms. Lefaivre testified that "the majority of students in our 6:1:1 program are students on the autism spectrum..." [R375]. Most students in these classes are also ambulatory. [R377]. ***SRO Bates further ignored the guidance of the United Federation of Teachers, the union representing the teachers employed at DOE schools***, which recognizes that in a 6:1:1 class: "Student's behavior is characterized as aggressive, self-abusive or extremely withdrawn and with severe difficulties in the acquisition and generalization of language and social skill development."[4] These students "usually" require "a specific behavior management program." *Id.*

SRO Bates' unsupported conclusions about Dr. Rodriguez deserved no deference. Although courts often defer to administrative officers' decisions, "the deference owed to an SRO's decision depends on the ***quality of that opinion***." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012). (emphasis added). Courts may consider "whether the decision being reviewed is well-reasoned and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *Id.*, quoting *M.H.*, 685 F.3d at 244. Courts have held that an inadequately reasoned decision fails to carefully consider significant evidence. *Scott ex-rel. C.S. v. New York City Dep't of Educ.*, 6 F. Supp. 3d 424, 440–41 (S.D.N.Y. 2014).

SRO Bates arbitrarily and capriciously discounted Dr. Rodriguez's ***independent expert testimony***—and IHO Ciccone's findings regarding the same—substituting his own opinion for that of an expert in the field. The SRO's conclusion that DOE's proposed grouping did not deny R.Z. a FAPE was baseless and should be afforded no deference. The Court should overturn SRO Bates' decision that Defendants did not provide R.Z. with a FAPE during the 2021–2022 school year.

SRO Bates misapplied the law in finding that Plaintiffs' rejection of DOE's offer was the

[4] https://www.uft.org/teaching/students-disabilities/special-classes/special-class-staffing-ratios.

*Compared with* Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

***Horan School assistant principal***, who also testified at the underlying administrative hearing. Ms. Lefaivre testified that "the majority of students in our 6:1:1 program are students on the autism spectrum..." [R375]. Most students in these classes are also ambulatory. [R377]. ***SRO Bates further ignored the guidance of the United Federation of Teachers, the union representing the teachers employed at DOE schools***, which ~~describes the students~~recognizes that in a 6:1:1 class ~~as~~: "Student's behavior is characterized as aggressive, self-abusive or extremely withdrawn and with severe difficulties in the acquisition and generalization of language and social skill development."[4] These students "usually" require "a specific behavior management program." *Id.*

~~SRO Bates simply concluded Dr. Rodriguez was wrong, with no legitimate basis for this conclusion.~~SRO Bates' unsupported conclusions about Dr. Rodriguez deserved no deference. Although courts often defer to administrative officers' decisions, "the deference owed to an SRO's decision depends on the ***quality of that opinion***." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012)~~., 694 F.3d at 189.~~ (emphasis added). Courts may consider "whether the decision being reviewed is well-reasoned and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *Id.*, quoting *M.H.*~~ v. New York City Dep't of Educ., 685 F.3d 217, 244 (2d Cir. 2012).~~, 685 F.3d at 244. Courts have held that an inadequately reasoned decision fails to carefully consider significant evidence. *Scott ex-rel. C.S.*~~ v. New York City Dep't of Educ., 6 F. Supp. 3d 424, 440–41 (S.D.N.Y. 2014).~~ *v. New York City Dep't of Educ.*, 6 F. Supp. 3d 424, 440–41 (S.D.N.Y. 2014).

SRO Bates arbitrarily and capriciously discounted Dr. Rodriguez's ***independent expert testimony***—and ~~effectively substituted~~IHO Ciccone's findings regarding the same—substituting his own opinion for that of an expert in the field. ~~Thus, the~~The SRO's conclusion that DOE's proposed grouping did not deny R.Z. a FAPE was baseless~~,~~ and should be afforded no deference~~,~~

~~in fact, should be overturned by this~~. The Court ~~finding~~should overturn SRO Bates' decision that Defendants did not provide R.Z. with a FAPE ~~for~~during the 2021–2022 school year.

SRO Bates misapplied the law in finding that Plaintiffs' rejection of DOE's offer was the

[4] https://www.uft.org/teaching/students-disabilities/s

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved

Reply Memorandum of Law in Further Support of Motion for Reconsideration (Dkt. #47)

*Compared with* Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

type of "speculative" challenge that the Second Circuit prohibited in *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236 (2d Cir. 2015). In *M.O.*, the Second Circuit held that parents ***can prospectively challenge the proposed school location*** as long as the prospective challenge is not "speculative." *M.O.*, 793 F.3d at 244. In the context of improper grouping claims, it is impermissibly speculative for a parent to claim denial of a FAPE by speculating that the proposed school, which theoretically could place the student in a classroom with the appropriate grouping, still would not place the student in the grouping required by the student's IEP. But that is not the case here.[5]

Plaintiffs have never argued that the Horan School could not provide R.Z.'s IEP-required 6:1:1 class placement. Instead, Plaintiffs assert (and have asserted throughout) that because of R.Z.'s particular disabilities and needs, DOE 6:1:1 classrooms are inappropriate and unsafe for R.Z.—and would thus not allow him to progress academically. Far from being "speculative" Plaintiffs' concerns were ***factually grounded*** in the IEE and the opinion of independent expert Dr. Rodriguez, as corroborated by Horan School Assistant Principal Michelle Lefaivre and the guidance of the United Federation of Teachers. Rather than arguing that DOE simply would not provide an appropriate class grouping when they could, the Plaintiffs asserted DOE could not provide appropriate class groupings ***based on facts and evidence*** regarding the typical 6:1:1 class ***specifically offered at the Horan School.***

Plaintiffs have demonstrated that the Court erroneously deferred to SRO Bates's decision, which discounted expert testimony and misapplied the relevant law. In so doing, the Court ignored

[5] The cases cited by SRO Bates have similar fact patterns. *See J.C. v. New York City Dep't of Educ.*, 643 F. App'x 31 (2d Cir. 2016) (the child was not denied a FAPE because the parent alleged that the proposed school location did not contain the appropriate classroom grouping); *G.S. v. New York City Dep't of Educ.*, No. 15-CV-5187 (RA), 2016 WL 5107039 (S.D.N.Y. Sept. 19, 2016) (it was impermissibly speculative to allege that the school would not place the student in the appropriate grouping when the school could do so); *L.C. v. New York City Dep't of Educ.*, No. 15 CIV. 4092 (PAC), 2016 WL 4690411 (S.D.N.Y. Sept. 6, 2016) (speculative to allege that the proposed school would not be able to implement the student's IEP).

type of "speculative" challenge that the Second Circuit prohibited in *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236 (2d Cir. 2015). In *M.O.*, the Second Circuit held that parents ***can prospectively challenge the proposed school location*** as long as the prospective challenge is not "speculative." *M.O.*, 793 F.3d at 244. In the context of improper grouping claims, it is impermissibly speculative for a parent to claim denial of a FAPE by speculating that the proposed school, which theoretically could place the student in a classroom with the appropriate grouping, still would not place the student in the grouping required by the student's IEP. But that is not the case here.[5]

Plaintiffs have never argued that the Horan School could not provide R.Z.'s IEP-required 6:1:1 class placement. Instead, Plaintiffs assert (and have asserted throughout) that because of R.Z.'s particular disabilities and needs, DOE 6:1:1 classrooms are inappropriate and unsafe for R.Z.—and would thus not allow him to progress academically. Far from being "speculative" Plaintiffs' concerns were ***factually grounded*** in the IEE and the opinion of independent expert Dr. Rodriguez, as corroborated by Horan School Assistant Principal Michelle Lefaivre and the guidance of the United Federation of Teachers. Rather than arguing that DOE simply would not provide an appropriate class grouping when they could, the Plaintiffs asserted DOE could not provide appropriate class groupings ***based on facts and evidence*** regarding the typical 6:1:1 class ***specifically offered at the Horan School.***

Plaintiffs have demonstrated that the Court erroneously deferred to SRO Bates's decision, which discounted expert testimony and misapplied the relevant law. In so doing, the Court ignored

[5] The cases cited by SRO Bates have similar fact patterns. *See J.C. v. New York City Dep't of Educ.*, 643 F. App'x 31 (2d Cir. 2016) (the child was not denied a FAPE because the parent alleged that the proposed school location did not contain the appropriate classroom grouping); *G.S. v. New York City Dep't of Educ.*, No. 15-CV-5187 (RA), 2016 WL 5107039 (S.D.N.Y. Sept. 19, 2016) (it was impermissibly speculative to allege that the school would not place the student in the appropriate grouping when the school could do so); *L.C. v. New York City Dep't of Educ.*, No. 15 CIV. 4092 (PAC), 2016 WL 4690411 (S.D.N.Y. Sept. 6, 2016) (speculative to allege that the proposed school would not be able to implement the student's IEP).

6

Text only in previous submission

Text in both

Text only in new submission

Text in both, but has been moved

Reply Memorandum of Law in Further Support of Motion for Reconsideration (Dkt. #47)

material facts showing the IEP was defective. Plaintiffs are thus entitled to summary judgment, as the record shows DOE denied R.Z. a FAPE during the 2021–2022 school year, and the Parent's unilateral placement at iBRAIN was appropriate.

**B. Plaintiffs Were Not Offered an Opportunity for Meaningful Participation in the IEP Process, Which Led to R.Z. Being Denied a FAPE**

For the school district to provide a student with a FAPE, it must (a) comply with the procedural requirements outlined in the IDEA and (b) develop an IEP reasonably calculated to enable the student to receive educational benefits. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206–07 (1982) and *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005). An integral component of complying with the procedural requirements outlined in IDEA is allowing parents to participate in their child's IEP meeting. The public agency "responsible for providing education to children with disabilities" (34 C.F.R. § 300.33) is required to "take steps to ensure that one or both of the parents of a child with a disability are present at each IEP meeting or are afforded an opportunity to participate," including providing ample notice and "scheduling the meeting at a mutually agreed on time and place." 34 C.F.R. § 300.322 (a). *Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1044 (9th Cir. 2013).

As the Ninth Circuit noted, "Procedural violations that interfere with parental participation in the IEP formulation process undermine the essence of the IDEA. ***An IEP that addresses the child's unique needs cannot be developed if those people who are most familiar with the child's needs are not involved or fully informed.***" *Amanda J. ex-rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 892 (9th Cir. 2001) (emphasis added).

To afford parents a meaningful opportunity to take part in creating their child's IEP, a school district must try to schedule the IEP meeting at a mutually agreed-upon time and place. 34 C.F.R. § 300.322(a)(2); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(d). A school district may conduct a

*Compared with* Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

~~nity to~~

material facts showing the IEP was defective. Plaintiffs are thus entitled to summary judgment, as the record shows DOE denied R.Z. a FAPE during the 2021–2022 school year, and the Parent's unilateral placement at iBRAIN was appropriate.

**B. Plaintiffs Were Not Offered an Opportunity for Meaningful Participation in the IEP Process, Which Led to R.Z. Being Denied a FAPE**

For the school district to provide a student with a FAPE, it must (a) comply with the procedural requirements outlined in the IDEA and (b) develop an IEP reasonably calculated to enable the student to receive educational benefits. *See ~~Board~~Bd. of Educ. of Hendrick Hudson ~~Central School~~ Cent. Sch. Dist., Westchester ~~County, 458 U.S. at 206~~ Cnty. v. Rowley*, 458 U.S. 176, 206–07 (1982) and *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005). ~~, 427 F.3d at 192.~~

~~Part~~An integral component of complying with the procedural requirements outlined in ~~the~~ IDEA is allowing parents to participate in their child's IEP meeting. The public agency "responsible for providing education to children with disabilities" (34 ~~C.F.R. § 300.33)~~ C.F.R.

§ 300.33) is required to "take steps to ensure that one or both of the parents of a child with a disability are present at each IEP meeting or are afforded an opportunity to participate," including providing ample notice and "scheduling the meeting at a mutually agreed on time and place." ~~34 C.F.R. § 300.322 (a).~~34 ~~*Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1044 (9th Cir. 2013).~~ C.F.R. § 300.322 (a). *Doug C. v. Hawaii Dep't of Educ.*, 720 F.3d 1038, 1044 (9th Cir. 2013).

As the Ninth Circuit ~~has~~ noted, "Procedural violations that interfere with parental participation in the IEP formulation process undermine the ~~very~~ essence of the IDEA. ***An IEP that addresses the child's unique needs cannot be developed if those people who are most familiar with thechild's needs are not involved or fully informed.***" *Amanda J. ex-rel. Annette J. v. Clark Cnty. Sch. Dist*~~., 267 F.3d 877, 892 (9th Cir. 2001~~., 267 F.3d 877, 892 (9th Cir. 2001) (emphasis added).

To afford parents a meaningful opportunity to take part in creating their child's IEP, a school district must try to schedule the IEP meeting at a mutually agreed-upon time and place. ~~34 C.F.R.~~34 C.F.R.

~~§ 300.322(a)(2);~~§ 300.322(a)(2); N.Y. Co[...] district may conduct a

~~[8]Committee on Special Education.~~

~~Text only in previous submission~~

Text in both

Text only in new submission

Text in both, but has been moved

Reply Memorandum of Law in Further Support of Motion for Reconsideration (Dkt. #47)

CSE[6] meeting without a parent present ***only if*** "the school is unable to convince the parents that they should attend. Here, the school must have a detailed record of its attempts, and the results of those attempts, to arrange a mutually agreed on time and place." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(d)(3).

DOE's feeble attempt to obtain the Plaintiffs' participation in the August 2021 CSE fell far short of what was legally required. DOE sent ***one*** email to the Plaintiffs less than seven days before the date and time DOE ***unilaterally*** set for the meeting. [R181-R186]. ***DOE never followed up*** when the Plaintiffs failed to respond because the email had gone to their junk folder. [R295-R296]. ***There was no attempt to hold the meeting at the requisite "mutually agreed-upon time and place."*** The DOE then made ***one*** phone call to the Plaintiffs ***on the date of the meeting***, and when no one answered the phone, proceeded to hold the meeting. [R187].[7] Even if the Plaintiffs had answered the phone call, such notice would not have satisfied the notice requirements of the IDEA. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(c)(1) (notice must be provided in writing and more than five days before the meeting).

Along with the clearly insufficient notice, it was also a pure violation of IDEA for the district to hold the meeting in the absence of the Plaintiffs, without the Plaintiffs affirmatively refusing to participate. ***If the parent affirmatively opts not to participate, the district must obtain the parent's consent to proceed.*** As federal regulations state, a CSE meeting may be conducted without a parent ***only if*** "the public agency is unable to convince the parents that they should attend." 34 C.F.R. § 300.322 (d) (emphasis added). Here, the Plaintiffs never said they did not wish to attend the

[6] Committee on Special Education.

[7] *See Davis v. Banks*, No. 21CV3265PKCPK, 2023 WL 6214107, at *12 (E.D.N.Y. Sept. 25, 2023) (By holding the June 5th meeting without Plaintiff, Defendants predetermined O.C.'s placement and prevented Plaintiff from meaningfully participating in the IEP process. *J.G.*, 777 F. Supp. 2d at 648. Accordingly, the Court concludes that O.C. was deprived of a FAPE for the 2019–20 school year.)

*Compared with* Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

CSE[6] meeting without a parent present ***only if*** "the school is unable to convince the parents that they should attend. Here, the school must have a detailed record of its attempts, and the results of those attempts, to arrange a mutually agreed on time and place." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(d)(3).

DOE's feeble attempt to obtain the Plaintiffs' participation in the August 2021 CSE fell far short of what was legally required. DOE sent ***one*** email to the Plaintiffs less than seven days before the date and time DOE ***unilaterally*** set for the meeting. [R181-R186]. ***DOE never followed up*** when the Plaintiffs failed to respond because the email had gone to their junk folder. [R295-R296]. ***There was no attempt to hold the meeting at the requisite "mutually agreed-upon time and place."*** The DOE then made ***one*** phone call to the Plaintiffs ***on the date of the meeting***, and when no one answered the phone, proceeded to hold the meeting. [R187].[7] Even if the Plaintiffs had answered the phone call, such notice would not have satisfied the notice requirements of the IDEA. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(c)(1) (notice must be provided in writing and more than five days before the meeting).

Along with the clearly insufficient notice, it was also a pure violation of IDEA for the district to hold the meeting in the absence of the Plaintiffs, without the Plaintiffs affirmatively refusingto participate. ***If the parent affirmatively opts not to participate, the district must obtain the parent's consent to proceed.*** As federal regulations state, a CSE meeting may be conducted without a parent ***only if*** "the public agency is unable to convince the parents that they should attend." ~~34 C.F.R.~~34 C.F.R. ~~§ 300.322 (~~§ 300.322 (d) (emphasis added). Here, the Plaintiffs never said they did not wish to attend the

[6] Committee on Special Education.

[7] *See Davis v. Banks*, No. 21CV3265PKCPK, 2023 WL 6214107, at *12 (E.D.N.Y. Sept. 25, 2023) (By holding the June 5th meeting without Plaintiff, Defendants predetermined O.C.'s placement and prevented Plaintiff from meaningfully participating in the IEP process. *J.G.*, 777 F. Supp. 2d at 648. Accordingly, the Court concludes that O.C. was deprived of a FAPE for the 2019–20 school year.)

~~Text only in previous submission~~

Text in both

Text only in new submission

Text in both, but has been moved

Reply Memorandum of Law in Further Support of Motion for Reconsideration (Dkt. #47)

meeting, and it cannot be said the district could not convince them. Instead, the Plaintiffs missed one email and one phone call on the day of the meeting and then lost the opportunity to participate in the formation of R.Z.'s IEP.

It cannot be disputed that DOE did not provide the requisite notice of the August 2021 CSE meeting to the Plaintiffs, thereby failing in their obligations under the IDEA to ensure that the Plaintiffs could participate in the meeting. Yet SRO Bates refused to "review whether the district took sufficient steps to ensure the parents attendance at the CSE meeting" [R22, n.8] because he cursorily concluded that any alleged process violation could not rise to the denial of a FAPE. It is unclear where SRO Bates finds support for the contention that procedural violations, such as the one here, cannot rise to a denial of FAPE, especially after the Supreme Court in *Rowley* found that for the school district to provide a student with a FAPE, one thing it must do is ***comply with the procedural requirements outlined in the IDEA***. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07 (emphasis added). The ill-reasoned and counterfactual conclusion by SRO Bates, that procedural violations cannot rise to a denial of FAPE, should enjoy no deference from this Court.

Consequently, Plaintiffs have demonstrated that the Court erroneously deferred to SRO Bates' decision, which improperly—and with no explanation—discounted the Plaintiffs' inability to meaningfully participate in R.Z.'s IEP, thereby failing to uphold New York State law and well-established legal precedent. In so doing, the Court ignored material facts proving that the IEP was defective. Plaintiffs are thus entitled to summary judgment, as the record shows that DOE denied R.Z. a FAPE for the 2021–2022 ESY, and the Parent's unilateral placement at iBRAIN was appropriate.

*Compared with* Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

meeting, and it cannot be said the district could not convince them. Instead, the Plaintiffs missed one email and one phone call on the day of the meeting~~,~~ and then lost the opportunity to participate in the formation of R.Z.'s IEP.

It cannot be disputed that DOE did not provide the requisite notice of the August 2021 CSE meeting to the Plaintiffs, thereby failing in their obligations under the IDEA to ensure that the Plaintiffs could participate in the meeting. Yet SRO Bates refused to "review whether the district took sufficient steps to ensure the parents attendance at the CSE meeting" [R22, n.8] because he cursorily concluded that any alleged process violation could not rise to the denial of a FAPE. It is unclear where SRO Bates finds support for the contention that procedural violations, such as the one here, cannot rise to a denial of FAPE, especially after the Supreme Court in *Rowley* found that for the school district to provide a student with a FAPE, one thing it must do is ***comply with the procedural requirements ~~set forth~~outlined in the IDEA***. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, ~~458 U.S. at 206~~ 458 U.S. at 206–07 (emphasis added). The ill-reasoned and counterfactual conclusion by SRO Bates, that procedural violations cannot rise to a denial of FAPE, should enjoy no deference from this Court.

Consequently, Plaintiffs have demonstrated that the Court erroneously deferred to SRO Bates' decision, which improperly—and with no explanation—discounted the Plaintiffs' inability to meaningfully participate in R.Z.'s IEP, thereby failing to uphold New York State law and well-established legal precedent. In so doing, the Court ignored material facts proving that the IEP was defective. Plaintiffs are thus entitled to summary judgment, as the record shows that DOE denied R.Z. a FAPE for the 2021–2022 ESY, and the Parent's unilateral placement at iBRAIN was appropriate.

~~Text only in previous submission~~

Text in both

Text only in new submission

Text in both, but has been moved

Reply Memorandum of Law in Further Support of Motion for Reconsideration (Dkt. #47)

*Compared with* Memorandum of Law in Support of Motion for Reconsideration (Dkt. #42)

**CONCLUSION**

For the reasons outlined above, Plaintiffs request that the Court grant the Plaintiffs' Motion for Reconsideration, grant Plaintiffs the relief sought in their Complaint, and grant the Plaintiffs any other, further, and different relief that the Court deems just, proper, and equitable.

Dated: April 8, 2024
New York, New York

Respectfully submitted,
Brain Injury Rights Group, Ltd.
*Attorneys for Plaintiffs*

By: /S/
**Ataur Raquib**, Esq. (5860523)
300 East 95th Street, #130
New York, New York 10128
ataur@pabilaw.org

**CONCLUSION**

For the reasons outlined above, Plaintiffs request that the Court grant the Plaintiffs' Motion for Reconsideration, grant Plaintiffs the relief sought in their Complaint, and grant the Plaintiffs any other, further, and different relief that the Court deems just, proper, and equitable.

Dated: ~~February 16~~April 8, 2024
New York, New York

Respectfully submitted,
Brain Injury Rights Group, Ltd.
*Attorneys for ~~the Plaintiff(s)~~Plaintiffs*

By:

~~Text only in previous submission~~
Text in both
Text only in new submission
Text in both, but has been moved